FILED

OCT 04 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERLABSERVICE, OOO, a Russian limited liability company,<br><br>　　　　　　　　　　　　Plaintiff,<br>v.<br>ILLUMINA, INC., a Delaware corporation,<br>　　　　　　　　　　　　Defendant. | Case No.: 15cv2171-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR POSTING OF A BOND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1030; ORDER REQUIRING PLAINTIFF TO POST A BOND IN THE AMOUNT OF $58,422.50**<br><br>[Doc. No. 30.] |

　　　　Before the Court is defendant's Motion for Posting of a Bond Pursuant to California Code of Civil Procedure Section 1030 [Doc. No. 30]; plaintiff's Opposition to the Motion [Doc. No. 33]; and defendant's Reply [Doc. No. 34]. In the Motion, defendant argues that plaintiff should be ordered by the Court to post a security bond for defendant's anticipated litigation costs in the amount of $77,517.50. Defendant argues that plaintiff should be ordered to post a security bond, because it is a foreign entity that is essentially immune from judgment in California, and because defendant has shown

there is a reasonable possibility that it will prevail against plaintiff in this action and obtain a judgment in its favor. [Doc. No. 30-1, at pp. 12-21.]

In its Opposition, plaintiff contends that no security bond should be imposed, because defendant failed to meet its burden of showing there is a reasonable probability it will prevail in the action. In addition, plaintiff argues that it will be unfairly burdened if the Court imposes a security bond, and this burden could preclude resolution of the case on the merits. Even if the Court determines that a bond is proper, plaintiff argues that the amount requested by defendant is excessive and should be reduced. [Doc. No. 33, at pp. 9-10.]

For the reasons outlined below, the Court finds that plaintiff's Motion for Posting of a Bond Pursuant to California Code of Civil Procedure Section 1030 must be GRANTED. As outlined more fully below, the Court finds that plaintiff must be ordered to post a bond in the amount of $58,422.50. This amount represents the reasonable costs defendant expects to recover if it prevails against plaintiff on the causes of action in the First Amended Complaint.

## ***Background***

Plaintiff's First Amended Complaint includes causes of action for breach of contract and common counts. According to the First Amended Complaint, plaintiff Interlabservice, OOO, is a limited liability company based in Russia, and defendant Illumina is a Delaware corporation with headquarters in San Diego. [Doc. No. 20, at pp. 1-2.] Jurisdiction in this case is based on diversity of citizenship. [Doc. No. 20, at p. 2.]

Plaintiff alleges in the First Amended Complaint that it entered into a series of distributor agreements with defendant Illumina, Inc. between 2011 and 2014. Under the terms of these agreements, plaintiff was required to provide warranty services to end customers who purchased defendant's products through plaintiff. [Doc. No. 20, at pp. 3-4.] According to plaintiff, defendant was obligated under these agreements to reimburse plaintiff for the expense of providing warranty services and replacement parts to end customers. [Doc. No. 20, at p. 4, ¶¶ 14, 17.]

Plaintiff alleges that defendant breached the agreements by refusing to honor its warranty obligations. As a result, plaintiff claims it was forced to provide warranty services, supplies, and parts to customers without any compensation from defendant. [Doc. No. 20, at pp. 5-6.] Plaintiff's claims for damages caused by defendant's alleged failure to meet its contract obligations exceeds $500,000. [Doc. No. 20, at p. 7.]

Defendant filed a Cross-Complaint against plaintiff which includes the following causes of action: (1) breach of written contract; (2) breach of covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) intentional interference with economic advantage. [Doc. No. 2, at p. 1.] The Cross-Complaint claims damages in excess of $75,000. [Doc. No. 2, at pp. 7-8.]

Defendant's Cross-Complaint generally alleges that it entered into distributor agreements with plaintiff which required plaintiff to "use all commercially diligent efforts to market, distribute and support" defendant's medical devices in Russia and to refrain from undertaking any "unilateral activities" involving defendant's medical devices after the agreement terminated. [Doc. No. 2, at p. 3.] In connection with the distributor agreements, defendant alleges that it also issued a written power of attorney authorizing plaintiff to act as its representative in Russia, so that plaintiff could register defendant's products with the Russian government as required under Russian law. [Doc. No. 2, at p. 3.] Defendant believes plaintiff was aware that defendant could not import, market, or sell its medical devices in Russia without "continued registration." [Doc. No. 2, at p. 3.]

The Cross-Complaint further alleges that the most recent distributor agreement expired by its own terms on December 31, 2014. [Doc. No. 2, at p. 3.] Defendant alleges that plaintiff secretly and maliciously de-registered defendant's medical devices in Russia sometime between December 2014 and May 2015. [Doc. No. 2, at pp. 3-4.] Defendant's belief is that plaintiff de-registered the medical devices in order to disrupt and interfere with defendant's relationship with its new distributor and to retaliate against defendant for allowing the distributor agreements between plaintiff and defendant to terminate

without renewal. [Doc. No. 2, at pp. 6-7.] As a result of this de-registration of medical devices, defendant claims it experienced an "actual disruption" of its existing and potential business relationships and its ability to market and sell its medical devices in Russia through its new distributor. Defendant further claims that it incurred attorney's fees and other expenses to reinstate the registration of its medical devices in Russia. [Doc. No. 2, at pp. 4-7.]

## Discussion

### I. *Defendant's Motion for a Bond to Secure Costs.*

In support of its Motion for Post of a Bond, defendant cites Civil Local Rule 65.1.2(a) and California Code of Civil Procedure Section 1030. Essentially, defendant's argument is that its request for a security bond is justified, because defendant has met its burden of showing it is likely to defeat plaintiff's breach of contract and common counts causes of action. According to defendant, plaintiff cannot prevail against defendant on these causes of action, because it is unable to point to any specific terms of the parties' distributor agreements that defendant breached. [Doc. No. 30-1, at pp. 13-15.] In Opposition, plaintiff contends that it will prevail in the action, because the terms of the parties' distributor agreements support its allegation that defendant breached the agreements by failing to fulfill its warranty obligations. [Doc. No. 33, at pp. 3-6.]

Local Rule 65.1.2(a) states as follows: "A judge may, upon demand of any party, where authorized by law and for good cause shown, require any party to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate." CivLR 65.1.2(a). In *Montserrat Overseas Holdings, S.A. v. Larsen*, 709 F.2d 22 (9th Cir. 1983), the Ninth Circuit considered whether a similar court rule was properly applied by the District of Hawaii. Citing Rule 290-1 of the Rules of Court for the District of Hawaii, the plaintiff in a diversity action alleging breach of a real estate contract was ordered by the Court to post a bond to cover potential attorney's fees. *Id.* at 24. On appeal, the Ninth Circuit affirmed the order requiring the plaintiff to post a bond for potential attorney's fees, because the plaintiff was a foreign corporation with no assets

1  in the United States, the amount of the bond was not excessive, Hawaii law provided for
2  the recovery of attorney's fees, and the action appeared to lack merit. *Id.* at 24-25.

3  "There is no specific provision in the Federal Rules of Civil Procedure relating to
4  security for costs. However, the federal district courts have inherent power to require
5  plaintiffs to post security for costs." *In re Merrill Lynch Relocation Management, Inc.*,
6  812 F.2d 1116, 1121 (9th Cir.1987). "Typically federal courts, either by rule or by case-
7  to-case determination, follow the forum state's practice with regard to security for costs,
8  as they did prior to the federal rules; this is especially common when a non-resident party
9  is involved." *Simulnet East Associates v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574
10 (9th Cir. 1994), citing 10 Wright, Miller & Kane, *Federal Practice and Procedure*: Civil
11 2nd § 2671. In sum, this Court has authority to impose a bond requirement under Local
12 Rule 65.1.2(a) and/or California Code of Civil Procedure Section 1030.

13 California Code of Civil Procedure Section 1030 provides in part as follows:

> (a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding. For the purposes of this section, 'attorney's fees' means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.
>
> (b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding. The motion shall be accompanied by an affidavit in support of the grounds for the motion and by a memorandum of points and authorities. The affidavit shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding.

27 ///
28 ///

> (c) If the court, after hearing, determines that the grounds for the motion have been established, the court shall order that the plaintiff file the undertaking in an amount specified in the court's order as security for costs and attorney's fees.

Cal. Code Civ. Proc. §§ 1030(a)-(c).

"The purpose of [Section 1030] is to enable a California resident sued by an out-of-state resident to secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction." *Yao v. Superior Court*, 104 Cal. App. 4th 327, 331 (2002) (internal citations and quotations omitted). Under California law, a defendant seeking to impose a bond under Section 1030 has the burden to show there is a "reasonable possibility" that it will prevail in the action and obtain judgment in its favor. *Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432 (2001). A plaintiff "seeking relief from the requirement of posting a bond or undertaking has the burden of proof to show entitlement to such relief. [¶]If adequate evidence supports relief from the requirement of posting a bond or undertaking, the trial court may then exercise its discretion by waiving the requirement of a security." *Williams v. FreedomCard, Inc.*, 123 Cal. App. 4th 609, 614 (2004).

When considering whether to order an out-of-state or foreign plaintiff to post a security bond, the Ninth Circuit in *Simulnet v. Ramada*, 37 F.3d 573, held that District Courts must "strike a delicate balance" and take care "not to deprive a plaintiff of access to the federal courts," as this could have "serious constitutional implications." *Id.* at 575-576. The Ninth Circuit also cited several key factors that should be considered to determine whether it is appropriate to impose a bond to secure potential costs. These factors include: (1) the purpose of the action and whether it was being pursued for an improper purpose; (2) whether the posting of a bond would effectively infringe an impecunious plaintiff's constitutional right of access to the courts; (3) the degree of probability or improbability of success on the merits; and (4) the fairness and

///

reasonableness of the amount of the security bond being sought as viewed from the perspectives of the moving defendant and the non-domiciliary plaintiff. *Id.* at 575-576.

In *Simulnet v. Ramada*, 37 F.3d at 573, the Ninth Circuit considered whether the Nevada District Court properly applied a Nevada statute that is similar to California's Section 1030 when it ordered the out-of-state plaintiff to post a cost bond five days before trial. *Id.* at 574. The litigation progressed in the District Court for three years without a request for a cost bond. During this time, the parties engaged in extensive discovery and the District Court denied two summary judgment motions by the defendant. At the pre-trial conference five days before trial, the defendant argued that the plaintiff should be ordered to post a cost bond, because it had already incurred a substantial amount of attorney's fees and costs to defend the action, and the underlying contracts provided for attorneys' fees to the prevailing party. When asked whether it would be able to pay these costs if the defendant prevailed in the action, the plaintiff acknowledged that it was insolvent. *Id.* Based on the amount of fees and costs defendant said it had already incurred, the District Court imposed a $500,000 cost bond. *Id.* When the plaintiff was unable to post the bond, the District Court dismissed the action. *Id.*

On appeal, the Ninth Circuit in *Simulnet v. Ramada* reversed, concluding based on the particular facts and circumstances of the case that the District Court abused its discretion in imposing the cost bond. *Id.* at 576. Noting that the "common practice" is to "apply the applicable state law," the Ninth Circuit's reversal was based in part on the District Court's failure to follow Nevada law. However, the Ninth Circuit's main concern was that the plaintiff had been unconstitutionally deprived of "access to the federal courts" because of an "impecunious circumstance." *Id.* at 575-576. Key facts cited by the Ninth Circuit to support the reversal were that: (1) the District Court knew the plaintiff would be unable to post the bond; (2) there was nothing to indicate the plaintiff was pursuing the case for an improper purpose; (3) the case proceeded for three years without a bond; and (4) the plaintiff's claims survived two defense motions for summary judgment, so it was apparent there were issues of fact for trial. *Id.*

More recently, in at least two unpublished cases, the Ninth Circuit concluded cost bonds were appropriate under California Code of Civil Procedure 1030. First, in *Kourtis v. Cameron*, 358 Fed.Appx. 863 (9th Cir. 2009), a copyright infringement action, the Ninth Circuit held that cost bonds imposed by the District Court under Section 1030 were appropriate, because the plaintiffs lived out of state and the defendants were able to show a "reasonably possibility" they would prevail based on a favorable ruling in a "substantially similar" case. *Id.* The Ninth Circuit also concluded the amount of the bond was reasonable, particularly because the District Court "reasonably reduced" the amount of the bond when the plaintiffs "presented additional financial information." *Id.* at 867.

Similarly, in *Pittman v. Avish Partnership*, 525 Fed.Appx. 591 (9th Cir. 2013), an Americans with Disabilities Act case, the Ninth Circuit concluded that a cost bond was appropriate under California Code of Civil Procedure Section 1030, because the plaintiff lived out of state, and the defendant met its burden of showing it was likely to prevail in the action. Defendant met this burden by submitting evidence showing that plaintiff's attorney had a history of filing frivolous lawsuits against the defendants. Defendant also submitted evidence demonstrating that the plaintiff made statements during deposition testimony in other lawsuits that were "irreconcilable" with the allegations in the pending action. *Id.* at 593. The Ninth Circuit further concluded that the amount of the bond was reasonable, because the District Court properly considered the amount of the bond from the perspective of both plaintiff and defendants and reduced the amount of the bond from $240,000 to $50,000 after giving the plaintiff an opportunity to submit additional financial information. *Id.* at 594.

Here, it is undisputed that plaintiff is a limited liability company based in Russia. In addition, plaintiff does not challenge defendant's contention that a judgment issued by this Court against plaintiff would be unenforceable in Russia. [Doc. No. 33, at pp. 1-2; Doc. No. 20, at pp. 1-2.]

///

Accordingly, the Court finds that subsection (a) of California Code of Civil Procedure Section 1030 has been satisfied, because plaintiff is a foreign corporation.

Defendant argues there is a reasonable possibility that it will defeat the two causes of action alleged in the First Amended Complaint for breach of contract and common counts. [Doc. No. 30-1, at p. 13.] Both of these causes of action are based on the same set of factual allegations. [Doc. No. 20, at pp. 4-7.] In defendant's view, plaintiff has not cited and cannot cite any specific provision of the subject distributor agreements that defendant breached, because there is nothing in the parties' agreements that specifically state that defendant was required to reimburse or compensate plaintiff for warranty services or parts. [Doc. No. 30-1, at pp. 14-15.]

Defendant also submitted several declarations in support of its Motion, at least two of which persuasively challenge plaintiff's theory of the case. [Doc. No. 30-4, at pp. 1-4.] Mr. Garcia's Declaration states that he has been a Senior Distribution Manager for defendant's international operations since April 2012. In this position, Mr. Garcia is responsible for managing distribution and sales channels in Europe, the Middle East, and Africa. [Doc. No. 30-4, at p. 1.] From April 2012 through January 2014, he worked with plaintiff and was plaintiff's "primary point of contact." [Doc. No. 30-4, at p. 2.]

Mr. Garcia explains in his Declaration that plaintiff and defendant operated during the relevant time period pursuant to distributor agreements. Plaintiff would purchase defendant's products directly from defendant and resell them to customers in Russia, Ukraine, and Kazakhstan. [Doc. No. 30-4, at p. 2.] Defendant's products "generally come with a one-year warranty guaranteeing free replacement parts to end-customers." [Doc. No. 30-4, at p. 2.] Pursuant to the parties' distributor agreements, plaintiff would receive warranty requests directly from customers, order replacement parts from defendant free of charge, and then provide those parts and warranty services to the customers free of charge. [Doc. No. 30-4, at p. 2.]

Mr. Garcia further explains in his Declaration that his primary contact with plaintiff was through its representative, Andrey Lomonosov. [Doc. No. 30-4, at 2.] In

2012, Mr. Garcia states that he was advised by Mr. Lomonosov about a problem plaintiff was having with ordering replacement parts free of charge from defendant for customers with warranty issues. Under Russian law, parts ordered on a free-of-charge basis were subject to customs duties, various taxes, and a long, cumbersome process that took many months to complete. As a result, Mr. Lomonosov advised Mr. Garcia that plaintiff had decided to order and pay for replacement parts for some customers and had spent some $30,000 to $40,000 doing so. In addition, plaintiff delayed ordering about $80,000 worth of parts for other customers with warranty issues. [Doc. No. 30-4, at p. 3.]

Mr. Garcia states in his Declaration that in late 2012 the parties discussed the replacement parts issue during meetings and reached an agreement so that plaintiff could avoid the difficulties associated with ordering parts on a free-of-charge basis. According to Mr. Garcia, defendant agreed to increase plaintiff's discount on its purchases of defendant's products from 15 percent to 20 percent. This extra discount was then incorporated into the parties' 2013 distributor agreement. At the time, the parties believed this would be enough to compensate plaintiff for having to pay for replacement parts instead of ordering them on a free-of-charge basis. [Doc. No. 30-4, at p. 3.] In support of his Declaration, Mr. Garcia also submitted copies of e-mails which reflect that Mr. Lomonosov understood the parties' agreement and that plaintiff would be responsible for paying the cost of warranty orders thereafter. [Doc. No. 30-4, at pp. 3-4.]

Defendant also submitted the Declaration of Mr. Lomonosov, which states that he worked for plaintiff from 2011 to 2014 and during this time period was responsible for managing plaintiff's relationship with defendant. Based on a review of the Declaration of Mr. Lomonosov, it is apparent that his understanding of the distributor agreements and the parties' working relationship during the relevant time period is the same as that of Mr. Garcia. [Doc. No. 30-6, at pp. 1-3.]

In Opposition to defendant's Motion, plaintiff argues that it will prevail on the merits of its First Amended Complaint, because the terms of the distributor agreements support its allegations that defendant was responsible for all warranty obligations

1 "without any changes" and "until the very end" of the parties' business relationship.
2 [Doc. No. 33, at pp. 2-9.] In support of its Opposition, plaintiff submitted the Declaration
3 of Dmitry Veryutin which contradicts the Declarations submitted by defendant. [Doc.
4 No. 33-1, at pp. 1-8.]

5       Mr. Veryutin's Declaration states that he is a member of plaintiff's board of
6 directors and is responsible for its legal affairs. [Doc. No. 33-1, at p. 2.] In conclusory
7 fashion, Mr. Veryutin states that defendant "was always responsible for reimbursing
8 [plaintiff's] cost of providing customer support and cost of replacement parts for
9 [defendant's] products covered by the warranty." [Doc. No. 33-1, at p. 3.] Although
10 Mr. Veryutin further states that there were discussions about making changes to
11 plaintiff's warranty obligations, he claims the proposed changes were "never finalized
12 and never became part of the distributor agreements, despite the fact that some but not all
13 transactions carried [a] bigger discount." [Doc. No. 33-1, at p. 3.] In addition,
14 Mr. Veryutin states that any changes to the discount rate were "due to the general strategy
15 shift for [defendant] regarding its pricing for distributors worldwide, rising list prices and
16 [a] desire to maintain market share and gratitude for excellent results achieved by
17 [plaintiff] in promoting [defendant's] products in its exclusive territory." [Doc. No. 33-1,
18 at p. 3.] Mr. Veryutin's Declaration also attacks the credibility of Mr. Lomonosov.
19 [Doc. No. 33-1, at p. 4.]

20       Contrary to the statements made by Mr. Garcia and Mr. Lomonosov in their
21 Declarations, it is Mr. Veryutin's position that defendant was always responsible for
22 ***reimbursing*** plaintiff for the cost of warranty replacement parts and services [Doc. No.
23 33-1, at p. 3] and that any increases in the discount rate were not intended to compensate
24 plaintiff for any warranty replacements parts. [Doc. No. 33-1, at p. 3.] However,
25 plaintiff's Opposition and Mr. Veryutin's Declaration fail to clearly identify any specific
26 provisions of the distributor agreements which provide that defendant was required to
27 reimburse plaintiff for the cost of warranty parts and/or services. Rather, plaintiff's
28 Opposition only cites general provisions of the distributor agreements indicating

defendant offered warranties on its products. Nor does plaintiff's Opposition explain how it intends to prove the allegations in the First Amended Complaint that defendant breached the distributor agreements by allegedly failing to reimburse plaintiff for the costs of providing warranty services and replacement parts to end customers in plaintiff's territory. [Doc. No. 20, at p. 4.]

Unlike the Declarations of Mr. Garcia and Mr. Lomonosov, Mr. Veryutin's Declaration does not include details from which this Court can conclude that his statements are based on personal knowledge and actual involvement in day-to-day operations or negotiations.[1] The Declarations of Mr. Garcia and Mr. Lomonosov not only explain the positions they held during the relevant time period but also show they were in a position to understand how the distributor agreements worked in practice, and how the parties understood their obligations under the distributor agreements. Although Mr. Veryutin's contrary Declaration suggests there may be factual issues for trial, his Declaration is not enough to convince the Court to deny defendant's Motion for Posting of a Bond. Rather, based on the facts and circumstances presented, the Court finds that defendant submitted more than enough evidence to show there is a reasonable possibility that judgment will be entered in its favor as to the causes of action in the First Amended Complaint.

Under the circumstances presented, the Court finds that defendant is entitled to an order requiring plaintiff to post a bond or surety pursuant to California Code of Civil Procedure Section 1030 and Civil Local Rule 65.1.2(a). Defendant has shown there is good cause for plaintiff to furnish security for costs. In addition, defendant satisfied the requirements of Section 1030 by submitting enough evidence to show that plaintiff is a

---

[1] Defendant filed Objections to statements made in Mr. Veryutin's Declaration. [Doc. No. 34-1, at pp. 1-6.] The Court sustains plaintiff's objections to the extent they contend that Mr. Veryutin's statements lack foundation. Fed.R.Evid. 602.

foreign corporation and that there is a reasonable possibility judgment will be entered in its favor as to the causes of action in the First Amended Complaint.

## II.     *Amount of the Bond or Surety.*

As noted above, defendant seeks an order requiring plaintiff to post a bond or surety in the total amount of $77,517.50. This amount is based on defendant's anticipated recoverable pre-trial and trial costs, which are set forth in its Opposition and in the Declaration of Matthew R. Jedreski, who is one of defendant's attorneys. [Doc. No. 30-1, at pp. 20-21.]

Plaintiff argues that the amount of any bond or surety ordered by the Court should be "nominal" in order to "maintain equities." [Doc. No. 33, at p. 1.] Plaintiff believes the amount of the bond requested by defendant is "overly excessive" and should be dramatically reduced. [Doc. No. 33, at p. 10.] In this regard, Mr. Veryutin's Declaration states as follows: "Requiring [plaintiff] to pay a very large sum of money at the outset of litigation would be [tanta]mount to a terminating sanction," because plaintiff would be required to "deposit the full amount of [a] bond in cash in lieu of surety as [plaintiff] has no credit history in the USA. [In addition, plaintiff] is already taxed by being forced to litigate a case on the other side of the world against a much larger and much better financed party in its own back yard." [Doc. No. 33-1, at p. 4-5.]

Plaintiff's Opposition argues that it was "forced" to litigate the case here rather than in Russia even though most of the witnesses are located in Russia, because defendant "intentionally chose a home court advantage by requiring that the case be brought only in San Diego." [Doc. No. 33, at p. 2.] In this regard, plaintiff refers to Section 18.8 of the distributor agreements which state in part as follows: "The parties hereby consent to the exclusive jurisdiction of, and venue in, the state and federal courts within San Diego County, California, U.S.A." [Doc. No. 33, at p. 2.] Defendant's Reply presents a contrary view that plaintiff could have filed suit in Russia and argued that the forum selection clause is unenforceable but chose instead to sue defendant here for tactical and strategic advantages. [Doc. No. 34, at pp. 3-4.]

Despite its contention that a bond or surety requirement "would be equal to [a] terminating sanction" [Doc. No. 33, at p. 10; Doc. No. 33-1, at p. 4], plaintiff did not submit any specific evidence to show that it would be financially unable to meet the requirement or that it would be unable to effectively litigate the case if defendant's Motion is granted. Mr. Veryutin's Declaration merely states in conclusory fashion that plaintiff's financial condition has been adversely affected by the Russian economy; that plaintiff is already disadvantaged by having to litigate the case in the United States; and that plaintiff has no credit history in the United States, so plaintiff would only be able to satisfy a bond requirement by depositing the full amount of the bond in cash. [Doc. No. 33-1, at pp. 3-4.] Therefore, based on the lack of relevant information submitted, the Court has no reason to conclude that plaintiff would be effectively denied access to the Court if defendant's Motion is granted and plaintiff is ordered to post a bond.

### A.  *Defendant's Anticipated Pre-Trial Costs*.

#### 1.  *Deposition Costs.*

Generally, the Federal Rules of Civil Procedure allow each party in a case to take a total of ten depositions. Each deposition is generally limited to one day of seven hours. Fed.R.Civ.P. 30(a)(2)(A)(i); 30(d)(1).

Defendant represents that it intends to take a total of ten depositions in the case. First, defendant intends to depose seven of plaintiff's officers, directors, and managing agents who "had direct involvement with the formation of the [distributor agreements], its modifications, the 5% discount deal, and the performance regarding warranty orders." [Doc. No. 30-2, at p. 2.] Second, defendant intends to depose Mr. Lomonosov and Nikolay Egorov, plaintiff's former employees who were "central to the negotiation of the Distributors Agreement when they worked for [plaintiff], and to transactions involving warranty orders with [defendant]." [Doc. No. 30-2, at p. 2.] Third, defendant intends to depose plaintiff's damages expert. [Doc. No. 30-2, at p. 2.]

Based on a statement previously made by plaintiff in writing, defendant anticipates that plaintiff also intends to take a total of ten depositions in the case. [Doc. No. 30-2, at

p. 3; Doc. No. 34, at p. 10.] However, in Opposition to the instant Motion, plaintiff complains that the number of anticipated depositions is too high. Plaintiff's position is that each party only needs to depose two witnesses each, so the total number of depositions should be four. [Doc. No. 33, at p. 10.] However, plaintiff does not explain the basis for its belief that it is only necessary for the parties to depose two witnesses each for a total of four depositions.[2] Since defendant provided adequate justification for taking ten depositions and plaintiff represented that it will only need to take two depositions, the Court will calculate the appropriate amount for the requested bond or surety based on a total of twelve depositions, ten by defendant and two by plaintiff. However, the Court will require plaintiff to seek leave of Court if it decides to take more than two depositions in the case.

To depose the ten witnesses identified above, defendant states that "it will need a court reporter and videographer" at a total cost of $11,800.00. [Doc. No. 30-2, at p. 2.] Based on "discount rates" obtained from a reporting service, Mr. Jedreski's Declaration states that the cost of a videographer will be $275.00 for the first hour and $100.00 for each additional hour for a total estimated cost of $935.00 for each deposition. The cost of a court reporter is $35.00 per hour with a total estimated cost of $245.00 per deposition. [Doc. No. 30-2, at p. 3.] Defendant has not explained why it believes that it needs both a court reporter and videographer for each and every deposition.

Federal Rule of Civil Procedure 30(b)(3)(A) provides in part as follows: "The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court order otherwise, testimony may be recorded by audio,

---

[2] As noted above, the Federal Rules permit each party to take ten (10) depositions without seeking leave of Court. Fed.R.Civ.P. 30(a)(2). The Court notes that plaintiff has not filed a motion for a protective order seeking to limit the number of depositions defendant intends to take in the case. Fed.R.Civ.P. 26(c).

audiovisual, or stenographic means. The noticing party bears the recording costs. . . ." Fed.R.Civ.P. 30(b)(3)(A).

Although the Federal Rules permit the noticing party to select the method for recording, Federal Courts have indicated that deposition costs may not be recoverable if they are "merely incurred for convenience." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). *See also Kalitta Air L.L.C. v. Central Texas Airborne System, Inc.*, 741 F.3d 955, 959 (9th Cir. 2013); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F.Supp.3d 503, 526 (E.D. Va. 2015). Without more, this Court questions the need to incur the considerable expense of having a videographer present for all ten of defendant's anticipated depositions. Since no justification has been provided from which the Court can conclude it is reasonably necessary to videotape all ten depositions, the Court will exclude videography expenses from defendant's estimate of recoverable costs for the purpose of determining the appropriate amount for the posting of a bond or surety. With the exclusion of the videography expenses, defendant's anticipated deposition costs are significantly reduced from $11,800.00 to **$2,450.00** for a court reporter only.[3]

As to some witnesses, defendant reasonably anticipates that it will be necessary to retain an interpreter who charges $795 for six hours plus $150 for each additional hour. [Doc. No. 30-2, at p. 3.] In this regard, Mr. Jedreski's Declarations states that defendant believes it will need to retain an interpreter for "ten seven-hour depositions of Russian witnesses." [Doc. No. 30-2, at p. 3.] To reach the total of ten anticipated depositions where it will need to retain an interpreter, Mr. Jedreski refers to **two** non-party witnesses, Mr. Lomonosov and Mr. Egorov, plus "**seven**" of plaintiff's officers, directors, and

---

[3]   The exclusion of the costs for a videographer at this time is solely for the purpose of calculating an appropriate and fair amount for a bond or surety under Section 1030 and is not intended to preclude defendant from seeking reimbursement of any such costs if it should prevail at trial.

16

managing agents, because they all speak Russian. [Doc. No. 30-2, at p. 2-3 (emphasis added).] Although defendant's estimate of $9,450.00 includes the cost of a Russian interpreter for a total of ten depositions, defendant has only identified nine anticipated deponents who speak Russian (*i.e.*, seven of plaintiff's officers, directors, and managing agents, and two of plaintiff's former employees). [Doc. No. 30-2, at p. 2.] Accordingly, the Court finds that defendant's estimated costs for a Russian interpreter during depositions must be reduced from $9,450.00 to **$8,505.00**.

### 2. *Costs Related to Non-Party Witnesses and Service of Process.*

Since both Mr. Lomonosov and Mr. Egorov reside in Russia and speak Russian as their first language, defendant's estimate includes anticipated costs of $4,030.00 to cover the cost of serving these witnesses with translated subpoenas and another $80 in witness fees. Defendant also expects to incur $40 in witness fees to depose plaintiff's damages expert. [Doc. No. 30-2, at p. 2.] Plaintiff has not specifically challenged the reasonableness of these costs. Therefore, defendant reasonably anticipates total costs in this category to be **$4,110.00**.

### 3. *Cost of Certified Transcripts.*

As noted above, defendant intends to take a total of ten depositions in the case, and based on a prior written representation by plaintiff, defendant also believed that plaintiff intended to take a total of ten depositions in the case. Based on this information, defendant anticipated it would need to spend a total of $21,900.00 to order certified copies of transcripts for a total of twenty (20) depositions at an estimated cost of $1,095.00 for each transcript. However, plaintiff indicated in its Opposition to defendant's Motion that it will only need to depose two witnesses. [Doc. No. 30-2, at p. 3; Doc. No. 33, at p. 10.] Since defendant provided adequate justification for taking ten depositions and plaintiff represented that it will only need to take two depositions, the Court will calculate the appropriate amount for the requested bond or surety based on a total of twelve depositions, ten by defendant and two by plaintiff. However, the Court will require plaintiff to seek leave of Court if it decides to take more than two depositions

in the case. Based on this new information, defendant can reasonably anticipate ordering certified transcripts for twelve (12) deponents at a cost of $1,095.00 each. Accordingly, the Court finds that defendant's estimated costs for certified deposition transcripts must be reduced from $21,900.00 to **$13,140.00**.

In sum, defendant reasonably expects to incur recoverable pre-trial costs of: (1) **$2,450.00** to retain a court reporter for a total of ten depositions; (2) **$8,505.00** to retain a Russian interpreter for nine depositions; (3) **$4,110.00** to serve Mr. Lomonosov and Mr. Egorov with translated subpoenas in Russia; and (4) **$13,140.00** to order certified deposition transcripts for twelve (12) deponents. Therefore, defendant's total anticipated recoverable pre-trial costs are **$28,205.00**.

### B. *Defendant's Anticipated Trial Costs*.

Since the parties' commercial dealings took place over a period of about three and one-half years, defendant estimates that the trial in this case will last seven days and that it will incur costs of about **$3,832.50** for obtaining certified trial transcripts from the court reporter, assuming that plaintiff will split the total cost. [Doc. No. 30-2, at p. 3.] Plaintiff has not specifically challenged the reasonableness of these costs.

With respect to the attendance of two key, non-party witnesses at trial, Mr. Lomonosov and Mr. Egorov, defendant expects to incur witness fees, per diem costs, and travel expenses in the amount of **$2,692.00**, plus an additional **$1,590.00** to pay the costs of a Russian interpreter during their trial testimony. [Doc. No. 30-2, at p. 4.] Plaintiff has not specifically challenged the reasonableness of these costs.

Since plaintiff has produced "thousands of documents in Russian," defendant estimates that it will incur costs to translate approximately 100 documents to be used as exhibits at trial. Defendant estimates the cost of these translations will be approximately **$22,103.00**. Plaintiff has not specifically challenged the reasonableness of these costs.

In sum, defendant reasonably expects to incur recoverable trial costs of **$30,217.50**, and based on the information set forth in the previous section, defendant reasonably expects to incur recoverable pre-trial costs of **$28,205.00**. Thus, the total

amount of pre-trial and trial costs that defendant reasonably expects to incur is **$58,422.50**. Therefore, the Court finds that it is reasonable to require plaintiff to post a Section 1030 bond in the amount of **$58,422.50**.

### *Conclusion*

Based on the foregoing, the Court finds that plaintiff's Motion for Posting of a Bond must be **GRANTED** pursuant to California Code of Civil Procedure Section 1030 and Civil Local Rule 65.1.2(a). Under the circumstances of the case and based on the evidence submitted, plaintiff is **ORDERED** to post a bond in the amount **$58,422.50** *within thirty (30) days of the entry of this Order*. Plaintiff shall refer to the Local Rules of the Southern District of California to ensure proper compliance with this Order.

IT IS SO ORDERED.

Dated: October 3, 2016

Hon. Karen S. Crawford
United States Magistrate Judge