UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERLABSERVICE, 000, a Russian limited liability company ,<br><br>  Plaintiff,<br><br>v.<br><br>ILLUMINA, INC., a Delaware corporation ,<br><br>  Defendant. | Case No.:  15cv2171-KSC<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE: DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS (SET ONE)**<br><br>**[Doc. No. 38.]** |

Before the Court is the parties' Joint Motion Re: Responses by Defendant to Plaintiff's Request for Production of Documents (Set One).  [Doc. No. 38.]  In the Joint Motion, plaintiff seeks an order compelling defendant to provide further responses to certain requests for production of documents.  For the reasons outlined more fully below, the Court finds that plaintiff's request for an order compelling defendant to provide further responses to requests for production of documents must be DENIED.

## *Background*

Plaintiffs First Amended Complaint includes causes of action for breach of contract and common counts.  According to the First Amended Complaint, plaintiff

Interlabservice, OOO, is a limited liability company based in Russia, and defendant Illumina is a Delaware corporation with headquarters in San Diego. [Doc. No. 20, at pp. 1-2.]  Jurisdiction in this case is based on diversity of citizenship. [Doc. No. 20, at p. 2.]

Plaintiff alleges in the First Amended Complaint that it entered into a series of distributor agreements with defendant between 2011 and 2014. Under the terms of these agreements, plaintiff was required to provide warranty services to end customers who purchased defendant's products through plaintiff. [Doc. No. 20, at pp. 3-4.] According to plaintiff, defendant was obligated under these agreements to reimburse plaintiff for the expense of providing warranty services and replacement parts to end customers. [Doc. No. 20, at p. 4, n 14, 17.]

Plaintiff alleges that defendant breached the distributor agreements by refusing to honor its warranty obligations. As a result, plaintiff claims it was forced to provide warranty services, supplies, and parts to customers without any compensation from defendant.  [Doc. No. 20, at pp. 5-6.]  Plaintiff's claims for damages caused by defendant's alleged failure to meet its contract obligations exceeds $500,000.  [Doc. No. 20, at p. 7.]

Defendant has also filed a Cross-Complaint against plaintiff which includes the following causes of action: (1) breach of written contract; (2) breach of covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) intentional interference with economic advantage. [Doc. No.2, at p. 1.] The Cross-Complaint claims damages in excess of $75,000. [Doc. No.2, at pp. 7-8.]

Defendant's Cross-Complaint generally alleges that it entered into distributor agreements with plaintiff which required plaintiff to "use all commercially diligent efforts to market, distribute and support" defendant's medical devices in Russia and to refrain from undertaking any "unilateral activities" involving defendant's medical devices after the agreement terminated. [Doc. No.2, at p. 3.]  In connection with the distributor agreements, defendant alleges that it also issued a written power of attorney authorizing plaintiff to act as its representative in Russia, so that plaintiff could register defendant's

1  products with the Russian government as required under Russian law.  [Doc. No.2, at
2  p. 3.]  Defendant believes plaintiff was aware that defendant could not import, market, or
3  sell its medical devices in Russia without "continued registration." [Doc. No. 2, at p. 3.]
4        The Cross-Complaint further alleges that the most recent distributor agreement
5  expired by its own terms on December 31, 2014. [Doc. No.2, at p. 3.]  Without
6  defendant's knowledge or consent, defendant alleges that plaintiff secretly and
7  maliciously de-registered defendant's medical devices in Russia sometime between
8  December 2014 and May 2015.  [Doc. No.2, at pp. 3-4.]  Defendant's belief is that
9  plaintiff de-registered the medical devices in order to disrupt and interfere with
10 defendant's relationship with its new distributor and to retaliate against defendant for
11 allowing the distributor agreements to terminate without renewal.  [Doc. No.2, at pp.
12 6-7.]  As a result of this de-registration of medical devices, defendant claims it
13 experienced an "actual disruption" of its existing and potential business relationships and
14 its ability to market and sell its medical devices in Russia through its new distributor.
15 Defendant further claims that it incurred attorney's fees and other expenses to reinstate
16 registration of its medical devices. [Doc. No.2, at pp. 4-7.]

### *Discussion*

18       "Unless otherwise limited by court order, the scope of discovery is as follows:
19 Parties may obtain discovery regarding any non-privileged matter that is relevant to any
20 party's claim or defense and proportional to the needs of the case, considering the
21 importance of the issues at stake in the action, the amount in controversy, the parties'
22 relative access to relevant information, the parties' resources, the importance of the
23 discovery in resolving the issues, and whether the burden or expense of the proposed
24 discovery outweighs its likely benefit.  Information within this scope of discovery need
25 not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The court
26 may, for good cause, issue an order to protect a party or person from annoyance,
27 embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).
28  / / /

*Plaintiff's Document Request Nos. 12, 14, and 15*

In Document Request Nos. 12, 14, and 15, plaintiff seeks production of documents from 2013 to the present described as defendant's "entire file" on its search for a new distributor in Russia; all communications with Nick Bates and Albiogen, OOO; and all communications between defendant and Albiogen, OOO. [Doc. No. 38, at pp. 4-6.] Apparently, Albiogen, OOO, is another distributor retained by defendant to sell and service its products in Russia "after the end of the parties['] contractual relationship." [Doc. No. 38, at p. 9-10.] Defendant has objected to these requests as irrelevant and overly broad. [Doc. No. 38, at pp. 4-7.]

Nick Bates is a manager for a wholly-owned subsidiary of defendant and was in charge of distribution and sales for defendant in Russia beginning in January 2014. [Doc. No. 38, at p. 4-6; Doc. No. 30-3, at p. 1-2.] According to defendant, Albiogen, OOO, is "a Russian entity related to the new distributor engaged by [defendant] after its contract with [plaintiff] ended per its own terms." [Doc. No. 38, at p. 10.] Mr. Bates submitted a Declaration in support of defendant's Motion for Posting of Bond. [Doc. No. 30-3, at pp. 1-4.] In this Declaration, Mr. Bates set forth his view as to why defendant decided not to renew its distributor agreement with plaintiff and "to begin working with a KhimExpert company, Albiogen." [Doc. No. 30-3, at p. 3.] According to Mr. Bates, he observed "several issues that caused [defendant] to reevaluate [plaintiff] as a distribution partner." [Doc. No. 30-3, at p. 2.] Mr. Bates' Declaration was signed in the United Kingdom under penalty of perjury under the laws of the United States. [Doc. No. 30-3, at p. 4.]

Plaintiff argues that defendant should be ordered to produce all documents responsive to Document Request Nos. 12, 14, and 15, because it believes that defendant's decision not to renew its distributor relationship with plaintiff was the result of corruption and not because of plaintiff's poor performance. Plaintiff's theory is that Mr. Bates received payments from a new distributor, and, as a result, had a motive to sabotage plaintiff s relationship with defendant. In addition, plaintiff suspects that Mr. Bates actually "sabotaged" its operations and "caused disruptions" in its relationships with

customers. [Doc. No. 38, at pp. 4-7.] If defendant is ordered to produce all documents responsive to Request Nos. 12, 14, and 15, plaintiff believes it will uncover evidence to supports its suspicions and it will then be able to amend the operative First Amended Complaint to add new parties and new causes of action. [Doc. No. 38, at pp. 4-7.] Plaintiff also argues that documents responsive to Request Nos. 12, 14, and 15 will "allow plaintiff to calculate its damages." [Doc. No. 38, at pp. 4-7.] Plaintiff does not explain how the requested documents could be used to calculate its alleged damages.

     Defendant argues convincingly that the documents sought in response to Document Request Nos. 12, 14, and 15 exceed the scope of discovery permitted under Federal Rule 26(b)(l), because the documents do not relate to any party's claim or defense. First, plaintiff is seeking an order compelling production of documents to uncover facts about defendant's decision to retain a new distributor rather than renew its distributor agreement with plaintiff, but the First Amended Complaint does not include any allegations indicating there was anything unlawful about the termination of the parties' business relationship or the distributor agreement. [Doc. No. 38, at p. 10; Doc. No. 20, at pp. 2-7.] Rather, the operative First Amended Complaint narrowly alleges that defendant was obligated under the distributor agreements to reimburse plaintiff for the expense of providing warranty services and replacement parts to end customers. [Doc. No. 20, at p. 4.] The First Amended Complaint further alleges that defendant breached the distributor agreements by refusing to honor its warranty obligations, so plaintiff was allegedly forced to provide warranty services, supplies, and parts to customers without any compensation from defendant. [Doc. No. 20, at pp. 5-6.] None of the documents sought in response to Request Nos. 12, 14, and 15 have any bearing on whether defendant was obligated to reimburse plaintiff for providing warranty services or replacement parts or the amount of damages plaintiff may have incurred because defendant did not meet its obligations in this regard.

     Second, the allegations in defendant's Cross-Complaint are also very narrow -- that plaintiff abused a power of attorney when it canceled defendant's product registration in

1  Russia. [Doc. No.2, at pp. 3-7.]  None of the documents sought in response to Request
2  Nos. 12, 14, and 15 have any bearing on whether plaintiff abused the power of attorney
3  by canceling defendant's product registration in Russia.  Therefore, the Court agrees with
4  defendant's contention that the documents plaintiff is seeking in response to Request Nos.
5  12, 14, and 15 do not meet the relevance standard in Federal Rule 26(b)(1).

6  Third, the proposed discovery relates to third parties who have not been named in
7  the operative First Amended Complaint, and based on the information before the Court, it
8  appears that these third parties are located in the United Kingdom and Russia.  Plaintiff
9  argues that defendant should be ordered to provide full and complete responses to
10 Request Nos. 12, 14, and 15, because plaintiff believes that facts uncovered in this
11 proposed discovery "would lead plaintiff to amend the complaint to add new parties and
12 new causes of action." [Doc. No. 38, at pp. 5-7.]  However, it is unclear whether
13 jurisdiction could be established over these third parties even if the proposed discovery
14 were to support plaintiff s suspicions about Mr. Bates and/or or Albiogen.  Nor is there
15 anything to indicate plaintiff could successfully move to amend the First Amended
16 Complaint to add new parties and causes of action based on its theory that Nick Bates
17 and/or Albiogen disrupted and interfered with the parties' business relationship.

18 Federal Rule of Civil Procedure 15(a) does provide that a party may seek leave to
19 amend its pleading and that "[t]he court should freely give leave when justice so
20 requires." Fed.R.Civ.P. 15(a).  On the other hand, leave to amend is not unlimited and
21 may be denied for reasons "such as undue delay, bad faith or dilatory motive on the part
22 of the movant, repeated failure to cure deficiencies by amendments previously allowed,
23 undue prejudice to the opposing party by virtue of allowance of the amendment, futility
24 of amendment, etc." *Foman* v. *Davis,* 371 U.S. 178,182 (1962).  For example, in
25 *Chodos* v. *West Publishing Co.,* 292 F.3d 992 (9th Cir. 2002), the Ninth Circuit upheld a
26 denial of leave to amend where the moving party was aware of the facts supporting a new
27 claim prior to the close of discovery and before making the first amendment to the
28 complaint. *Id.* at 1003.

On February 12, 2016, this Court issued a Scheduling Order which states in part as follows: "Any motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed on or before **March 4, 2016**. . . .  The dates and times set forth herein will not be modified except for good cause shown." [Doc. No. 26, at pp. 1, 5.]

"A court's evaluation of good cause is not coextensive with an inquiry into the propriety of [a proposed] amendment under ... Rule 15." [Citation omitted.]  Unlike Rule 15( a)' s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment.  The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' [Citations omitted.] Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. [Citations omitted.]  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. [Citation omitted.]  If that party was not diligent, the inquiry should end." *Johnson* v. *Mammoth Recreations, Inc.,* 975 F.2d 604,609 (9th Cir. 1992).

Here, the facts and circumstances presented are not consistent with a finding that the interests of justice favor granting any proposed motion by plaintiff to amend the First Amended Complaint based on plaintiff s theory that Mr. Bates and/or Albiogen unlawfully interfered with the business relationship between plaintiff and defendant. Nor are the facts and circumstances presented consistent with a finding that there is "good cause" to extend the long-expired deadline of March 4, 2016 to file any motion to amend the pleadings or to add new parties.

The original Complaint in this action was filed in state court on April 29, 2015. [Doc. No. 1-2, at p. 3.] The case was then removed to this Court by defendant on September 29, 2015 based on diversity of citizenship. [Doc. No. 1.]  Mr. Bates, allegedly a citizen of the United Kingdom, was named as a defendant in the original Complaint.

[Doc. No. 1-2, at p. 4.]  The original Complaint also included a specific claim against Mr. Bates for intentional interference with prospective economic relations that is essentially the same as the suspicions plaintiff expresses against Mr. Bates in the current Joint Motion.  [Doc. No. 1-2, at p. 7.]  Specifically, the original Complaint alleges that Mr. Bates knew about the distributor relationship between plaintiff and defendant and engaged in wrongful conduct to disrupt the relationship.  [Doc. No. 1-2, at p. 7.]  Plaintiff had to have an evidentiary basis for making the allegations against Mr. Bates prior to April 29, 2015, when it filed the original Complaint in state court.  Cal. Code. Civ. P. 128.7(b)(3); Fed.R.Civ.P. 11(b)(3).  In the Declaration of Mr. Bates, there is also evidence to indicate plaintiff was aware in December 2014 that defendant did not plan to renew the distributor agreement but instead planned to transition customers to Albiogen as its new distributor. [Doc. No. 30-3, at p. 3.]

On November 5, 2015, plaintiff filed its First Amended Complaint in this Court but did not name Mr. Bates as a defendant and did not allege there was any impropriety involved in the termination of the distributor agreements.  [Doc. No. 20, at pp. 1-9.]  Discovery in the case began on January 15, 2016, when the parties were ordered to complete their initial disclosures.  [Doc. No. 24, at p. 2.]  Then, in the Scheduling Order filed on February 12, 2016, the Court set a deadline of June 30, 2016 for the parties to complete all fact discovery in the case.  [Doc. No. 26, at p. 1.]

Based on the information provided with the instant Joint Motion, plaintiff did not seek documents from defendant to support its suspicions about Mr. Bates until April 18, 2016, almost a year after it made the interference allegations against him in the original Complaint, and more than a month after the expiration of the March 4, 2016 deadline for filing any motions to amend or join other parties.  Thus, the facts and circumstances presented are highly suggestive of undue delay, a dilatory motive, and lack of good cause or diligence.  Thus, even if plaintiff discovers evidence to support its suspicions about Mr. Bates and/or Albiogen, it appears unlikely plaintiff would be able to succeed on a motion to amend to allege interference with the business relationship between plaintiff

1  and defendant. Accordingly, the Court finds that plaintiff's request for an order
2  compelling defendant to provide further responses to Document Request Nos. 12, 14, and
3  15 must be DENIED.

### *Plaintiff's Document Request No. 16*

In Document Request No. 16, plaintiff seeks an order compelling defendant to provide access to its "[e]ntire technical support database regarding clients in Russia and Kazakhstan since 2011." [Doc. No. 38, at p. 7.] Defendant objects to this request as overly broad, vague, and irrelevant. [Doc. No. 38, at pp. 7-8.]

Plaintiff represents that defendant cut off its access to the database as soon as this case was filed. However, plaintiff claims that it needs access to the database, because it includes evidence of the warranty breach and the amount of plaintiff's damages. [Doc. No. 38, at pp. 7-8.]

Defendant represents that it already produced records showing "all technical support provided to any customer who purchased [defendant's] products through plaintiff." [Doc. No. 38, at p. 10.] However, defendant objects to producing additional records showing technical support (*i.e.,* warranty services) provided to end customers by any distributor other than plaintiff. Defendant argues that information about other distributors is not relevant to the narrow issues raised by the allegations in the First Amended Complaint -- whether defendant was obligated under the distributor agreements to reimburse plaintiff for the expense of providing warranty services and replacement parts to end customers and whether defendant breached any such obligation to plaintiff. [Doc. No. 38, at p. 11.]

Without more, it appears that Document Request No. 16 is overly broad and seeks production of documents that do not meet the relevance standard of Federal Rule 26(b)(1). Plaintiff has not offered to make the request more specific. Nor has plaintiff explained why it believes the responsive documents defendant has already produced are not enough. Based on the information before the Court, it appears that defendant has already provided plaintiff with an adequate response to this. Accordingly, the Court finds

1  that plaintiff's request for an order compelling defendant to provide a further response to
2  Document Request No. 16 must be DENIED.

### *Plaintiff's Document Request No. 17*

In Document Request No. 17, plaintiff seeks an order compelling defendant to produce all documents showing defendant's sales to customers in Russia from "2011 until today." [Doc. No. 38, at p. 8.]  Defendant objects to this request as overly broad, vague, and ambiguous.  Defendant also objects because it claims that plaintiff already has all responsive documents in its possession through December 2014.  To the extent plaintiff seeks documents reflecting sales after December 2014, defendant argues they are irrelevant. [Doc. No. 38, at p. 8-9.]

Defendant also represents in the parties' Joint Motion that it has produced all "records reflecting all sales by [defendant] to customers in Russia during the time when [plaintiff] was [defendant's] distributor . . . (April 2011 through December 2014)." [Doc. No. 38, at p. 11.]  On relevance grounds, defendant has not produced and objects to producing documents showing sales made to customers in Russia when plaintiff was not its distributor.  Defendant argues convincingly that documents showing sales made to customers while plaintiff was not its distributor have no bearing on the issues raised by the parties' pleadings.  Plaintiff has not alleged in the First Amended Complaint that defendant improperly terminated the distributor agreements or that any subsequent sales should have been credited to plaintiff. [Doc. No. 38, at p. 11.]

Without more, it appears that Document Request No. 17 is overly broad.  Plaintiff has not offered to make the request more specific.  Nor has plaintiff adequately explained the relevance of these documents or why it believes the responsive documents defendant has already produced are not enough.  Based on the information before the Court, it appears that defendant has already provided plaintiff with an adequate response to this request. [Doc. No. 38, at pp. 8, 11; Doc. No. 38-1, at pp. 2-3.]  Accordingly, the Court finds that plaintiff's request for an order compelling defendant to provide a further response to Document Request No. 17 must be DENIED.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that plaintiffs request for an order compelling defendant to provide further responses to Document Request Nos. 12, 14, 15, 16, and 17 is DENIED.

IT IS SO ORDERED.

Dated:  October 17, 2016

Hon. Karen S. Crawford
United States Magistrate Judge