FILED

17 SEP 20 AM 8:12

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERLABSERVICE, OOO, a Russian limited liability company,<br><br>Plaintiff,<br>v.<br>ILLUMINA, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 15cv2171-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO AMEND THE CROSS-COMPLAINT (CONSTRUED AS MOTION TO AMEND COUNTERCLAIMS AND FILE SUPPLEMENTAL COUNTERCLAIMS) [Doc. No. 45.]** |

Before the Court is defendant Illumina Inc.'s Motion to Amend the Cross-Complaint [Doc. No. 45]; plaintiff's Opposition [Doc. No. 49]; defendant's proposed Amended Cross-Complaint [Doc. No. 50]; and defendant's Reply [Doc. No. 51]. In the Motion to Amend, defendant seeks to add new causes of action and factual allegations against plaintiff that it claims to have discovered in an investigation commenced in May 2016 and completed in December 2016. [Doc. No. 45-1, at p. 3.] For the reasons outlined more fully below, the Court construes plaintiff's Motion to Amend the Cross-Complaint as a Motion to Amend Counterclaims and to File Supplemental Counterclaims and finds that the Motion must be DENIED. [Doc. No. 45.]

1

## Background

### First Amended Complaint

Plaintiff's First Amended Complaint includes causes of action for breach of contract and common counts. Plaintiff Interlabservice, OOO, is a limited liability company based in Russia, and defendant Illumina is a Delaware corporation with headquarters in San Diego. [Doc. No. 20, at pp. 1-2.]

Plaintiff alleges in the First Amended Complaint that it entered into a series of distributor agreements with defendant between 2011 and 2014. Under the terms of these agreements, plaintiff believes defendant was required to provide warranty services to end customers who purchased defendant's products through plaintiff. [Doc. No. 20, at pp. 3-4.] According to plaintiff, defendant was obligated under these agreements to reimburse plaintiff for the expense of providing warranty services and replacement parts to end customers. [Doc. No. 20, at pp. 4-8.]

Plaintiff alleges that defendant breached the distributor agreements by refusing to honor its warranty obligations. As a result, plaintiff claims it was forced to provide warranty services, supplies, and parts to customers without any compensation from defendant. [Doc. No. 20, at pp. 5-6.] Plaintiff's claims for damages caused by defendant's alleged failure to meet its contractual obligations exceeds $500,000. [Doc. No. 20, at p. 7.]

### Defendant's Cross-Complaint Against Plaintiff

Defendant also filed a Cross-Complaint against plaintiff which includes the following causes of action: (1) breach of written contract; (2) breach of covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) intentional interference with economic advantage. [Doc. No. 2, at p. 1.] The Cross-Complaint claims damages in excess of $75,000. [Doc. No. 2, at pp. 7-8.]

Defendant's Cross-Complaint generally alleges that it entered into distributor agreements with plaintiff which required plaintiff to "use all commercially diligent efforts to market, distribute and support" defendant's medical devices in Russia and to refrain

from undertaking any "unilateral activities" involving defendant's medical devices after the agreement terminated. [Doc. No. 2, at p. 3.] In connection with the distributor agreements, defendant alleges that it also issued a written power of attorney authorizing plaintiff to act as its representative in Russia, so that plaintiff could register defendant's products with the Russian government as required under Russian law. [Doc. No. 2, at p. 3.] Defendant believes plaintiff was aware that defendant could not import, market, or sell its medical devices in Russia without "continued registration." [Doc. No. 2, at p. 3.]

The Cross-Complaint further alleges that the most recent distributor agreement expired by its own terms on December 31, 2014. [Doc. No. 2, at p. 3.] Without defendant's knowledge or consent, defendant alleges that plaintiff secretly and maliciously de-registered defendant's medical devices in Russia sometime between December 2014 and May 2015. [Doc. No. 2, at pp. 3-4.] Defendant's belief is that plaintiff de-registered the medical devices in order to disrupt and interfere with defendant's relationship with its new distributor and to retaliate against defendant for allowing the final distributor agreement to terminate without renewal. [Doc. No. 2, at pp. 6-7.] As a result of this de-registration of medical devices, defendant claims it experienced an "actual disruption" of its existing and potential business relationships and its ability to market and sell its medical devices in Russia through its new distributor. Defendant further claims that it incurred attorney's fees and other expenses to reinstate registration of its medical devices. [Doc. No. 2, at pp. 4-7.]

### *Procedural History*

Plaintiff's original Complaint was filed in state court on April 29, 2015 and removed to this Court on September 29, 2015, so the case has been pending for about two years. [Doc. No. 1.] Defendant filed a Cross-Complaint against plaintiff on September 29, 2015. [Doc. No. 2.] Plaintiff then filed the operative First Amended Complaint on November 5, 2015. [Doc. No. 20.]

A Scheduling Order was entered on February 12, 2016. [Doc. No. 26.] The Scheduling Order included a deadline of March 4, 2016 for amending or filing additional

pleadings[1] and a deadline of June 30, 2016 for completing fact discovery. [Doc. No. 26, at p. 1.] Expert discovery was scheduled to be completed on October 31, 2016. [Doc. No. 26, at p. 3.] The final Pretrial Conference was set for April 21, 2017. [Doc. No. 26, at p. 5.]

Next, on March 23, 2016, defendant filed a Motion for Posting of a Bond Pursuant to California Code of Civil Procedure Section 1030. [Doc. No. 30.] In this Motion, defendant argued that plaintiff should be required to post a security bond in the amount of $77,517.50, because plaintiff resides in Russia, is essentially "immune from any California judgment," and there is a reasonable possibility defendant will prevail in the action. [Doc. No. 30-1, at pp. 12-13.] In Opposition to the Motion, plaintiff submitted a Declaration by Dmitry Veryutin, a member of plaintiff's board of directors who is responsible for legal affairs, stating in a conclusory fashion that requiring plaintiff to post a large bond "would be [tantamount] to a terminating sanction." [Doc. No. 33-1, at p. 4.] According to Mr. Veryutin's Declaration, plaintiff has "no credit history" in the United States, and, as a result, would have to "deposit the full amount of [the] bond in cash in lieu of surety." [Doc. No. 33-1, at p. 4.] Mr. Veryutin's Declaration also states in conclusory fashion that plaintiff was "already taxed by being forced to litigate[] a case on the other side of the world against a much bigger and much better financed party in its own back yard." [Doc. No. 33-1, at pp. 4-5.]

Since defendant was able to make the required showing under California Civil Code Section 1030 and plaintiff's opposing arguments were unsubstantiated, the Court granted defendant's Motion for Posting of a Bond. [Doc. No. 40, at pp. 9-13.] However, on reasonableness grounds, the Court significantly lowered the requested amount of the bond or surety from $77,517.50 to $58,422.50. [Doc. No. 40, at pp. 13-19.] Plaintiff was

---

[1] Paragraph 1 of the Scheduling Order filed on February 12, 2016 states as follows: "Any motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed on or before ***March 4, 2016***." [Doc. No. 26, at p. 1 (emphasis in original).]

4

15cv2171-KSC

ordered to post the bond by November 3, 2016. [Doc. No. 40, at p. 19.] However, plaintiff did not post any bond or surety. Nor did plaintiff seek reconsideration or reduction of the amount of the bond based on the submission of additional financial information supporting its contention that it would be unable to litigate the case because of the bond requirement.

On June 1, 2016, with 29 days remaining to complete discovery, the parties filed a Joint Motion to Extend the Discovery Cut-Off and Other Related Dates. [Doc. No. 35.] In the Joint Motion, the parties represented they would be unable to complete discovery by the June 30, 2016 deadline because of "logistical challenges." [Doc. No. 35, at p. 3.] They were in the process of translating and reviewing the 19,491 pages of documents that had been produced in Russian and in English. [Doc. No. 35, at p. 3.] In addition, the parties were trying to informally resolve discovery disputes as to where depositions should take place, which depositions should proceed, and whether plaintiff should produce additional "key documents." [Doc. No. 35, at p. 3.]

The Court granted the parties' Joint Motion to Extend the Discovery Cut-Off and Other Related Dates and issued an Amended Scheduling Order. [Doc. No. 41.] The time for completing discovery was extended from June 30, 2016 to January 31, 2017. [Doc. No. 41, at p. 1.] Expert discovery was to be completed by May 12, 2017. [Doc. No. 41, at p. 3.] The final Pretrial Conference is currently scheduled for October 6, 2017. [Doc. No. 41, at p. 5.]

On June 27, 2016, the parties filed two joint discovery motions. [Doc. Nos. 36 and 38.] In the parties' first Joint Motion re Determination of Discovery Dispute, the parties requested that the Court resolve disputes over the depositions of party witnesses. [Doc. No. 36, at p. 2.] The most significant issue was the location for these depositions. Defendant wanted party witnesses to be deposed in San Diego, because the parties "contractually agreed" to litigate any disputes here. [Doc. No. 36, at p. 3.] For equitable reasons, plaintiff wanted the depositions to be taken by videoconference and/or in a third country, such as France or the United Kingdom. [Doc. No. 36, at pp. 10-11.]

Defendant argued that it would be prejudiced if the depositions proceeded via videoconference. According to defendant, credibility is a key issue in the case, and videoconference depositions would make it more difficult to observe the demeanor of the deponents. In addition, defendant argued that videoconference depositions would be "exceedingly difficult" to conduct because of the need to examine the witnesses using "extensive documentation" in multiple languages. [Doc. No. 36, at p. 3.]

Plaintiff acknowledged in the Joint Motion that it does not have any offices, employees, or operations in the United States and that a "proper" deposition of its officers could _**not**_ take place in Russia. [Doc. No. 36, at pp. 11-12.] Because of the hardship and expense involved in having its executives obtain visas and travel to San Diego, plaintiff argued that it was unfair to require that depositions take place here. According to plaintiff, defendant "is a multinational corporation with offices in nine countries," so a trip to San Diego for a deposition would only be "one of the frequent trips to the headquarters." [Doc. No. 36, at p. 12.] Plaintiff, on the other hand, only has offices in Russia. [Doc. No. 36, at p. 12.] As a result, it was plaintiff's view that defendant wanted the depositions to take place in San Diego to "force" a settlement "on unreasonable terms." [Doc. No. 36, at p. 13.] Without support, plaintiff also claimed that the parties' contract was one of "adhesion drafted by [defendant]." [Doc. No. 36, at p. 11.] As a result, the contract included a "litigation clause," so plaintiff had no choice but to bring the case in California rather than in Russia "where most events took place and most evidence is located." [Doc. No. 36, at pp. 11-12.] Although defendant removed the case to this Court, plaintiff filed the action in state court, because state court rules require depositions to be taken near the deponent's "place of abode" unless the court orders otherwise. [Doc. No. 36, at p. 11.]

To ensure that the Court had authority over the witnesses and to protect the integrity of the deposition process under the circumstances presented, the Court ordered that all depositions of all party witnesses were to occur in person within the Southern District of California. [Doc. No. 42, at p. 2.] Based on information provided by

defendant in connection with its later filed Motion for Terminating Sanctions, it appears that the depositions of party witnesses were not completed. [Doc. No. 53-1, at pp. 2-5.]

In the parties' second Joint Motion re Determination of Discovery Dispute, plaintiff argued that defendant's responses to certain Requests for Production of Documents were inadequate. Plaintiff therefore sought an order compelling defendant to produce all responsive documents. [Doc. No. 38, at pp. 1-13.] Based on the documents sought in these requests, it was apparent that plaintiff's objective was to undertake a fishing expedition to attempt to uncover documents to support an untimely motion to amend the First Amended Complaint, which would have significantly expanded discovery and the scope of the case. In other words, plaintiff was looking for evidence to support new allegations that defendant unlawfully terminated its distributor agreement with plaintiff on or about December 31, 2014. The anticipated motion to amend would have requested the addition of new parties and causes of action related to defendant's decision to retain a new distributor rather than renew its distributor agreement with plaintiff. Any such motion to amend would have been filed more than a year after the Complaint was filed in state court on April 29, 2015 [Doc. No. 1]; long after the March 4, 2016 deadline for amending the pleadings [Doc. No. 26, at 1]; and without good cause for extending the deadline for amending the pleadings. [Doc. No. 38, at pp. 1-13; Doc. No. 43, at pp. 4-9.] As a result, the Court concluded that plaintiff was not entitled to an order compelling defendant to produce additional documents, because plaintiff's document requests were overly broad and sought access to documents that were not relevant to the matters at issue in the parties' pleadings. [Doc. No. 43, at pp. 1-11.]

Defendant's Motion to Amend the Cross-Complaint is not the only motion currently pending before the Court. Defendant also filed a Motion to Dismiss seeking dismissal of plaintiff's Complaint under Federal Rule of Civil Procedure 41(b), because of plaintiff's failure to comply with the Court's Order to post a bond or surety. [Doc. No. 44.] In addition, defendant filed a Motion for Terminating Sanctions requesting that the Court enter a default against plaintiff for its alleged failure to participate in discovery and

make witnesses available for deposition. [Doc. No. 53.] Plaintiff has opposed both of these Motions. [Doc. Nos. 46 and 54.]

## *Discussion*

### *I. Defendant's Proposed Amendments.*

In the Motion to Amend, defendant seeks to add new facts and causes of action that allegedly occurred during two distinct time periods. [Doc. No. 50-1, at pp. 5-6.] Defendant's first proposed amendment relates to actions that plaintiff allegedly took in August 2014, before the parties' final distributor agreement expired in December 2014 and before the original Complaint was filed in this action on April 29, 2015. This first proposed amendment alleges that in August 2014, plaintiff unilaterally and secretly filed for registration in Russia of trademarks for two of defendant's devices: the MiSeq and the HiSeq. Defendant alleges that plaintiff was expressly prohibited under the distributor agreement and the power of attorney from taking these actions which harmed defendant. [Doc. No. 50-1, at p. 5.]

Defendant's second proposed amendment relates to actions plaintiff allegedly took on or about May 21, 2016, long after the parties' final distributor agreement expired in December 2014 and long after the original Complaint was filed in this action on April 29, 2015. This second proposed amendment alleges that on May 21, 2016, plaintiff assigned the MiSeq and HiSeq trademarks to "a dormant third party company, Legal Assistance, LLC, which appears to be affiliated with plaintiff," causing harm to defendant. [Doc. No. 50-1, at p. 6.] Defendant also claims that plaintiff was not authorized to assign these trademarks to a third party and was expressly prohibited from doing so under the distributor agreement and the power of attorney. [Doc. No. 50-1, at p. 6.] In addition, defendant's proposed amendments state that plaintiff "may have also unilaterally and secretly" taken similar actions as to defendant's trademarks in Kazakhstan and Belarus, causing defendant further harm. The time period for these allegations is not stated. [Doc. No. 50-1, at p. 6.] Defendant believes plaintiff took all of these "intentional, malicious and oppressive" actions in retaliation for defendant's retention of a new distributor and

also to interfere with its business interests and with its relationship with its new distributor. Defendant therefore seeks compensatory and punitive damages against plaintiff. [Doc. No. 50-1, at pp. 8, 12.]

## II. *Crossclaims vs. Counterclaims.*

"A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim or if the claim relates to any property that is the subject matter of the original action. . . ." Fed.R.Civ.P. 13(g). "Such cross-claims are permissive rather than mandatory." *Peterson v. Watt*, 666 F.2d 361, 363 (9th Cir. 1982). In other words, crossclaims are not waived if a party fails to assert them and they can be pursued in a separate action. *Id.* By contrast, counterclaims are filed against an opposing party, such as when a defendant seeks affirmative relief against a plaintiff. *See, e.g., Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 839 (9th Cir. 2010).

Here, defendant's crossclaims are actually counterclaims, because they seek affirmative relief against plaintiff, an opposing party. The title of a pleading is not determinative. *See, e.g., U.S. for Use & Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073 (9th Cir. 1989) (stating that "[t]he erroneous characterization of the corrected pleading as an 'amended complaint' rather than as a supplemental pleading is immaterial"). Accordingly, from this point forward, the Court construes defendant's existing crossclaims and proposed amendments against plaintiff as counterclaims.

## III. *Permissive vs. Compulsory Counterclaims.*

Counterclaims can either be permissive or compulsory. "Permissive counterclaims are claims that do 'not aris[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim.' Fed.R.Civ.P. 13(b)." *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005). "Such unrelated counterclaims are referred to as permissive, since a party need not plead them, but instead may bring a separate action on the claim in the forum of his own choosing." *Harris v. Steinem*, 571 F.2d 119, 122 (2d Cir. 1978). "If a party has a counterclaim which is compulsory and

fails to plead it, it is lost, and cannot be asserted in a second, separate action after conclusion of the first." *Hydranautics v. FilmTec Corp.*, 70 F.3d 533 (9th Cir. 1995).

Compulsory counterclaims are defined in Federal Rule of Civil Procedure 13(a)(1), which states as follows:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(a)(1)(A)&(B).

### IV. *Logical Relationship Test for Compulsory Counterclaims.*

To determine whether a claim arises out of the "same transaction or occurrence," a "logical relationship" test is applied. *Mattel, Inc v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Id.* In other words, "a logical relationship between claims exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts. Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389–390 (3d Cir. 2002) (internal citations and quotations omitted).

"The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all

disputes arising out of common matters." *Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57, 60 (1962). In *Baker v. Southern Pacific Transportation*, 542 F.2d 1123 (9th Cir. 1976), for example, the plaintiff was the driver of a truck involved in a collision with the defendant's train. The plaintiff sued the defendant railroad company to recover for his injuries. The defendant railroad company then filed a counterclaim against the plaintiff and added the trucking company that owned the truck as a party to the counterclaim. *Id.* at 1126. A jury attributed 75 percent of the fault for the accident to the railroad. *Id.* The trucking company then filed a separate action against the railroad to recover for the damage to its truck. *Id.* The Ninth Circuit said this was "exactly the type of situation that Rule 13(a) was designed to prevent." *Id.* The trucking company's claim against the railroad company was a "compulsory counterclaim" and should have been asserted in the prior action. Having failed to assert it there, the trucking company waived the claim and could not maintain a separate action to recover any damages. *Id.*

By contrast, the Ninth Circuit in *Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108 (9th Cir. 2013), concluded there was no compulsory counterclaim even though opposing parties in the same case each claimed the other stole its trade secrets. The plaintiff claimed that several of its employees defected and disclosed trade secrets to the defendant. The defendant claimed the plaintiff stole its trade secrets "by engaging in chicanery (such as masquerading as buyers)" at trade fairs. *Id.* at 1110. Although the legal theories were the same, the factual allegations arose out of "'an entirely different or independent transaction or occurrence under Rule 13(a).'" *Id.* quoting 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1410, at 52 (3d ed. 2010).

Here, defendant's counterclaims are not compulsory, because they do not arise "out of the transaction or occurrence" that is the subject of plaintiff's First Amended Complaint. Fed.R.Civ.P. 13(a)(1)(A). Other than the existence of a contractual relationship between the parties, there is no overlap between the factual allegations or theories of liability alleged in the First Amended Complaint and those alleged in defendant's counterclaims. Separate trials on the parties' respective pleadings would not

involve significant duplication. The causes of action in the First Amended Complaint are for breach of contract and common counts. [Doc. No. 20, at p. 1.] Plaintiff's factual allegations against defendant arose while the parties were actively engaged in a contractual business relationship between 2011 and 2014. Plaintiff was defendant's distributor during this time period, and the allegations in the First Amended Complaint seek a determination as to whether defendant failed to pay amounts allegedly due under the parties' distributor agreements based on events that took place while these agreements were in effect. [Doc. No. 20, at pp. 3-7.]

Although one of defendant's counterclaims is for breach of contract, the corresponding factual allegations and proposed amendments are unrelated to plaintiff's breach of contract cause of action in the First Amended Complaint. In contrast to plaintiff's breach of contract allegations in the First Amended Complaint, defendant's counterclaim for breach of contract involves different terms of the parties' distributor agreement, as well as a separate power of attorney, and, for the most part, allegedly occurred during a different time period. [Doc. No. 2, at pp. 4-5.] Defendant's existing counterclaim for breach of contract alleges that plaintiff breached the distributor agreement and the power of attorney by secretly and unilaterally de-registering defendant's devices in Russia sometime between December 2014 (*i.e.*, around the time the final distributor agreement expired by its own terms on December 31, 2014) and May 2015. [Doc. No. 2, at pp. 3-4.] One of defendant's proposed amendments alleges that in August 2014 plaintiff secretly and without authority filed for registration in Russia of trademarks for two of defendant's devices. Defendant's remaining proposed amendment relates to conduct that allegedly occurred on or about May 21, 2016, long after the parties' business relationship had terminated, and alleges that plaintiff assigned two of defendant's trademarks to a third party. [Doc. No. 20, at pp. 3-4; Doc. No. 50-1, at p. 6.]

Defendant's existing counterclaims also allege three other theories of liability for breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and intentional interference with economic advantage. All of these theories of liability are

based on the same factual allegations as defendant's counterclaims for breach of contract, so they are all unrelated to the allegations in the First Amended Complaint. [Doc. No. 2, at pp. 5-7.] Accordingly, the Court finds that all of defendant's counterclaims are permissive rather than compulsory, because they do not arise out of the transactions or occurrences alleged in plaintiff's First Amended Complaint. In other words, it appears possible that defendant's counterclaims could be resolved in a separate action in a different and more convenient location.[2]

## V. *Leave to Amend.*

Federal Rule of Civil Procedure 15(a) allows a party to add claims or to allege facts that arose ***before*** the original pleading was filed. *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1174 (E.D. Cal. 2013). Federal Rule of Civil Procedure 13(e) states that: "The court *may* permit a party to file a supplemental pleading *asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.*" Fed.R.Civ.P. 13(e) (emphasis added). In addition, Federal Rule of Civil Procedure 15(d) "provides a mechanism for parties to file additional causes of action based on facts that [did not] exist when the original [pleading] was filed." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). In this regard, Rule 15(d) states as follows: "On motion and reasonable notice, the court *may*, on just terms, permit a party *to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.*" Fed.R.Civ.P. 15(d) (emphasis added). *See, e.g., United States ex rel Westrick v. Second Chance Body Armor, Inc.*, 893 F.Supp.2d 258, 266 (D. D.C. 2012).

///

---

[2] Plaintiff's Opposition argues that Russian law would apply to defendant's proposed counterclaims, and represents that witnesses with relevant information are located in Russia. [Doc. No. 49, at p. 2.] The Court expresses no opinion on the applicable law or on issues of jurisdiction or venue. However, plaintiff's arguments do suggest that defendant's counterclaims could not be effectively resolved here.

Based on the foregoing, defendant's proposed allegations about conduct that occurred in August 2014, before defendant's original counterclaims were filed on September 29, 2015, would be considered proposed amendments to defendant's original counterclaims. The remaining trademark allegations related to conduct that occurred on or about May 21, 2016 would need to be asserted in a new, separate pleading as supplemental counterclaims. Accordingly, the Court construes plaintiff's Motion as a Motion to Amend Counterclaims and Motion to File Supplemental Counterclaims.

Federal Rule of Civil Rule 15(a)(2) states that: "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Generally, the standards for considering whether to grant or deny a motion for leave to file a supplemental pleading are the same as those for granting a motion to file an amended complaint. *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996); *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1175 (E.D. Cal. 2013). Supplemental pleadings are generally favored because they "promote the economical and speedy disposition of the controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). While "some relationship must exist between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." *Id.* at 474.

"Although leave to amend 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), it 'is not to be granted automatically.'" *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.1990). Once a scheduling order is entered and the deadline for amending the pleadings has already expired, amendment is not permitted unless the scheduling order is modified to re-open the deadline. Fed.R.Civ.P. 16(b)(4). To obtain such a modification, "good cause" must be shown. Fed.R.Civ.P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*

14

15cv2171-KSC

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court set forth a number of factors to consider in determining whether leave to amend should be granted. *Id.* at 182. These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*

"Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Hawaii*, 902 F.2d at 1387. The Ninth Circuit has repeatedly indicated that prejudice may effectively be shown when a motion to amend is filed after the cutoff date for such motions, when discovery has closed or is about to close, and/or additional discovery would be required. *See, e.g., Zivkovic v. S. California Edison Co.*, 302 F.3d at 1087 (finding prejudice when motion to amend was filed several days before the deadline for completing discovery and three months before trial seeking to add causes of action that would have required additional discovery without a showing of good cause to extend the deadlines in the scheduling order); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (finding prejudice when plaintiffs filed a motion to amend after the deadline in the scheduling order without a showing of good cause and it was likely the proposed amendment would have "required reopening discovery so that [defendant] could develop its evidence to prepare its defenses to [the additional] theory [of liability]"); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (concluding there was prejudice when the plaintiff filed a motion to amend several months after the deadline in the scheduling order without giving a reason for the delay and where it was apparent that the amendments would require re-opening discovery); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794 (9th Cir. 1991) (affirming denial of motion for leave to amend filed after discovery was complete and the case was only four and a half months away from trial because the defendant would be "unreasonably prejudiced by the addition of numerous new claims so close to trial"); *Jackson v. Bank of Hawaii*, 902 F.2d at 1387-1389 (holding that the plaintiff's motion to amend was

properly denied because "additional discovery would have to be undertaken" on new claims that advanced "different legal theories and require[d] proof of different facts"); *Johnson v. Mammoth*, 975 F.2d at 607-610 (affirming denial of motion to amend filed after the deadline without a showing of good cause to modify the deadline in the pre-trial scheduling order).

In its Opposition to defendant's Motion to Amend, plaintiff argues that it is "[t]oo late" to amend the pleadings, because defendant's Motion was filed "[a]lmost two years" after the action was commenced on April 29, 2015. [Doc. No. 49, at p. 2.] In addition, plaintiff complains that it is "[t]oo late," because defendant's Motion was filed after the January 31, 2017 deadline for completing discovery, and this deadline had already been extended from June 30, 2016 until January 31, 2017. [Doc. No. 49, at p. 2.] In its Reply, defendant argues that it did not seek amendment "too late," because it did not learn of the conduct alleged in its proposed amendments until "late May 2016" and did not complete an investigation until December 2016. [Doc. No. 51, at pp. 2-3.]

As noted above, the deadline for amending the pleadings expired in this case on March 4, 2016. [Doc. No. 26, at p. 1.] Defendant's Motion to Amend was not filed until February 1, 2017, almost a year after this deadline expired. [Doc. No. 45.] Defendant has not requested an extension of the deadline and does not argue there is good cause for such an extension. [Doc. No. 45, at pp. 1-7; Doc. No. 51, at pp. 1-6.] Nor is diligence on the part of defendant apparent from the papers submitted in support of the Motion to Amend.

First, defendant's initial counterclaims, which were presented in a document entitled Cross-Complaint on September 28, 2015, alleged that sometime between December 2014 and May 2015, plaintiff de-registered defendant's devices in Russia. [Doc. No. 1-3, at pp. 4-5.] In part, defendant's proposed amendments include allegations that in August 2014, plaintiff also filed for registration of two of defendant's trademarks in Russia without defendant's knowledge or authorization. [Doc. No. 50-1, at p. 5.] There is nothing to indicate why plaintiff did not uncover conduct that allegedly occurred

in August 2014 until about two years later between May 2016 and December 2016. As a result, the Court is unable to conclude that defendant was diligent in seeking amendment as to the August 2014 allegations or that there is good cause to extend the March 4, 2016 deadline for seeking amendment of the pleadings.

Second, the remainder of defendant's proposed amendments allege that on or about May 21, 2016, plaintiff assigned two of defendant's devices to a third party even though it had no authority to do so. [Doc. No. 50-1, at p. 6.] Although defendant asserts in the Motion to Amend that it did not discover these "improper" assignments until "late May 2016" and did not complete its investigation into this matter until December 2016, there is nothing to indicate why the investigation took so long or why it took until February 1, 2017 to file the Motion to Amend. [Doc. No. 45-1, at p. 3.] As a result, the Court is unable to conclude that defendant was diligent in seeking to supplement its pleadings with these allegations or that there is good cause to extend the March 4, 2016 deadline for seeking to amend or supplement the pleadings.

Even if plaintiff could show good cause for extending the March 4, 2016 deadline for seeking to amend or supplement the pleadings, the circumstances indicate that defendant's proposed amendments would be prejudicial to plaintiff. The deadline for completing discovery expired on January 31, 2017 [Doc. No. 41, at p. 1], the day before defendant's Motion to Amend was filed on February 1, 2017 [Doc. No. 45]. As noted above, this deadline had already been extended from June 30, 2016 until January 31, 2017. [Doc. No. 26, at p. 1; Doc. No. 41, at p. 1.]

Plaintiff denies any involvement with the alleged assignment of defendant's trademarks to a third party. [Doc. No. 49, at p. 2.] It is therefore apparent that it would be necessary for plaintiff to undertake additional discovery to prepare a defense to defendant's new allegations. Accordingly, it would be necessary for the Court to re-open discovery for an undetermined amount of time for this discovery to be completed. In addition, plaintiff's Opposition to defendant's Motion to Amend indicates that it would be necessary to obtain access to witnesses and other evidence located in Russia. [Doc.

No. 49, at p. 2.] Plaintiff also questions this Court's jurisdiction to preside over any such discovery or defendant's new trademark allegations. [Doc. No. 49, at p. 2.] As mentioned above, discovery in the case has already been adversely affected because key witnesses are located in Russia, and defendant previously advised the Court that "Russian law prohibits the taking of depositions in Russia for American lawsuits – even if the depositions are taken by videoconference." [Doc. No. 36, at p. 5.] In any event, prejudice to plaintiff is obvious. The discovery necessary for plaintiff to prepare a defense to these new allegations has the potential to further delay this proceeding for an extended period of time, and the case has already been pending for more than two years since April 29, 2015. For these reasons, the Court finds that defendant's Motion to Amend must be DENIED.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that defendant's Motion to Amend is DENIED. [Doc. No. 45.] Defendant's Motion to Amend was filed after the March 4, 2016 deadline for amending or filing new pleadings, and defendant has not established good cause for re-opening and extending this deadline. In addition, it is apparent from the record that plaintiff would be prejudiced by the proposed amendments, in that it would be necessary to re-open and once again extend the time for completing discovery and to delay the resolution of the case for an indefinite period of time.

IT IS SO ORDERED.
Dated: September 19, 2017

Hon. Karen S. Crawford
United States Magistrate Judge