1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

17 SEP 26 PM 1:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

INTERLABSERVICE, OOO, a Russian
limited liability company,

Plaintiff,

v.

ILLUMINA, INC., a Delaware
corporation,

Defendant.

Case No.:  15cv2171-KSC

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS [Doc. No. 44];**

**ORDER GRANTING DEFENDANT'S
MOTION FOR TERMINATING
SANCTIONS [Doc. No. 53]**

Before the Court are two motions submitted by defendant Illumina Inc.:  (1) a

Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

41(b) [Doc. No. 44]; and (2) a Motion for Terminating Sanctions against plaintiff

pursuant to Federal Rule of Civil Procedure 37(b)(2) [Doc. No. 53].  Plaintiff has

opposed both of these Motions.  [Doc. Nos. 46, 54.]  Defendant also filed Replies to

plaintiff's opposing papers.  [Doc. No. 47, 55.]

The Motion to Dismiss [Doc. No. 44] and Motion for Terminating Sanctions [Doc.

No. 53] both seek dismissal of plaintiff's Complaint for similar reasons -- plaintiff's

alleged failure to prosecute the case and participate in the litigation as ordered.  As

1

1  outlined more fully below, the standards for considering defendant's Motions are similar.
2  In addition, the conduct alleged against plaintiff in both Motions are part of a pattern of
3  conduct that is relevant to both Motions. Therefore, the Court will consider the Motions
4  together. For the reasons outlined more fully below, the Court finds that defendant's
5  Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(b) [Doc. No. 44] and
6  defendant's Motion for Terminating Sanctions pursuant to Federal Rule of Civil 37(b)(2)
7  [Doc. No. 53] must be GRANTED.

## *Background*

### *First Amended Complaint*

10  Plaintiff's First Amended Complaint includes causes of action for breach of
11  contract and common counts. Plaintiff Interlabservice, OOO, is a limited liability
12  company based in Russia, and defendant Illumina is a Delaware corporation with
13  headquarters in San Diego. [Doc. No. 20, at pp. 1-2.]
14  Plaintiff alleges in the First Amended Complaint that it entered into a series of
15  distributor agreements with defendant between 2011 and 2014. Under the terms of these
16  agreements, plaintiff believes defendant was required to provide warranty services to end
17  customers who purchased defendant's products through plaintiff. [Doc. No. 20, at pp. 3-
18  4.] According to plaintiff, defendant was obligated under these agreements to reimburse
19  plaintiff for the expense of providing warranty services and replacement parts to end
20  customers. [Doc. No. 20, at pp. 4-8.]
21  Plaintiff alleges that defendant breached the distributor agreements by refusing to
22  honor its warranty obligations. As a result, plaintiff claims it was forced to provide
23  warranty services, supplies, and parts to customers without any compensation from
24  defendant. [Doc. No. 20, at pp. 5-6.] Plaintiff's claims for damages caused by
25  defendant's alleged failure to meet its contractual obligations exceeds $500,000. [Doc.
26  No. 20, at p. 7.]
27  ///
28  ///

2

### *Defendant's Counterclaims Against Plaintiff*

Defendant also filed a Cross-Complaint against plaintiff which the Court recently construed as Counterclaims. [Doc. No. 2; Doc. No. 58, at pp. 9-13.] Defendant's Counterclaims include the following causes of action: (1) breach of written contract; (2) breach of covenant of good faith and fair dealing; (3) breach of fiduciary duty; and (4) intentional interference with economic advantage. [Doc. No. 2, at p. 1.] Defendant alleges damages in excess of $75,000. [Doc. No. 2, at pp. 7-8.]

Defendant's Counterclaims generally allege that it entered into distributor agreements with plaintiff which required plaintiff to "use all commercially diligent efforts to market, distribute and support" defendant's medical devices in Russia and to refrain from undertaking any "unilateral activities" involving defendant's medical devices after the agreement terminated. [Doc. No. 2, at p. 3.] In connection with the distributor agreements, defendant alleges that it also issued a written power of attorney authorizing plaintiff to act as its representative in Russia, so that plaintiff could register defendant's products with the Russian government as required under Russian law. [Doc. No. 2, at p. 3.] Defendant believes plaintiff was aware that defendant could not import, market, or sell its medical devices in Russia without "continued registration." [Doc. No. 2, at p. 3.]

The Counterclaims further allege that the most recent distributor agreement expired by its own terms on December 31, 2014. [Doc. No. 2, at p. 3.] Without defendant's knowledge or consent, defendant alleges that plaintiff secretly and maliciously de-registered defendant's medical devices in Russia sometime between December 2014 and May 2015. [Doc. No. 2, at pp. 3-4.] Defendant's belief is that plaintiff de-registered the medical devices in order to disrupt and interfere with defendant's relationship with its new distributor and to retaliate against defendant for allowing the final distributor agreement to terminate without renewal. [Doc. No. 2, at pp. 6-7.] As a result of this de-registration of medical devices, defendant claims it experienced an "actual disruption" of its existing and potential business relationships and its ability to market and sell its medical devices in Russia through its new distributor.

15cv2171-KSC

1 Defendant further claims that it incurred attorney's fees and other expenses to reinstate
2 registration of its medical devices. [Doc. No. 2, at pp. 4-7.]

3 Recently, the Court denied defendant's Motion to Amend the Counterclaims and
4 File Supplemental Counterclaims. [Doc. No. 58.] The Court found that defendant's
5 Motion to Amend was filed after the deadline expired and without a showing of good
6 cause to re-open the time for amendment. In addition, the record indicated plaintiff
7 would be prejudiced by the late amendments. [Doc. No. 58, at pp. 1-18.]

### *Procedural History*

9 Plaintiff's original Complaint was filed in state court on April 29, 2015 and
10 removed to this Court on September 29, 2015, so the case has been pending for more than
11 two years. [Doc. No. 1.] Defendant's Counterclaims against plaintiff were filed on
12 September 29, 2015. [Doc. No. 2.] Plaintiff then filed the operative First Amended
13 Complaint on November 5, 2015. [Doc. No. 20.]

14 A Scheduling Order was entered on February 12, 2016. [Doc. No. 26.] The
15 Scheduling Order included a deadline of March 4, 2016 for amending or filing additional
16 pleadings and a deadline of June 30, 2016 for completing fact discovery. [Doc. No. 26,
17 at p. 1.] Expert discovery was scheduled to be completed on October 31, 2016. [Doc.
18 No. 26, at p. 3.] The final Pretrial Conference was set for April 21, 2017. [Doc. No. 26,
19 at p. 5.]

20 Next, on March 23, 2016, defendant filed a Motion for Posting of a Bond Pursuant
21 to California Code of Civil Procedure Section 1030. [Doc. No. 30.] "The purpose of
22 [Section 1030] is to enable a California resident sued by an out-of-state resident to secure
23 costs in light of the difficulty of enforcing a judgment for costs against a person who is
24 not within the court's jurisdiction." *Yao v. Superior* Court, 104 Cal.App.4th 327, 331
25 (2002) (internal citations and quotations omitted). Under California law, a defendant
26 seeking to impose a bond under Section 1030 has the burden to show there is a
27 "reasonable possibility" that it will prevail in the action and obtain judgment in its favor.
28 *Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432 (2001).

1        In the Motion for Posting of a Bond Pursuant to California Code of Civil

2   Procedure Section 1030, defendant argued that plaintiff should be required to post a

3   security bond in the amount of $77,517.50, because plaintiff resides in Russia, is

4   essentially "immune from any California judgment," and there is a reasonable possibility

5   defendant will prevail in the action. [Doc. No. 30-1, at pp. 12-13.] In Opposition to the

6   Motion, defendant submitted a Declaration by Dmitry Veryutin, a member of plaintiff's

7   board of directors who is responsible for legal affairs, stating in a conclusory fashion that

8   requiring plaintiff to post a large bond "would be [tantamount] to a terminating sanction."

9   [Doc. No. 33-1, at p. 4.] According to Mr. Veryutin's Declaration, plaintiff had "no

10  credit history" in the United States, and, as a result, would have to "deposit the full

11  amount of [the] bond in cash in lieu of surety." [Doc. No. 33-1, at p. 4.] Mr. Veryutin's

12  Declaration also states in conclusory fashion that plaintiff was "already taxed by being

13  forced to litigate[] a case on the other side of the world against a much bigger and much

14  better financed party in its own back yard." [Doc. No. 33-1, at pp. 4-5.]

15        Since defendant was able to make the required showing under California Civil

16  Code Section 1030 and plaintiff's arguments in opposition to the bond were

17  unsubstantiated, the Court granted defendant's Motion for Posting of a Bond. [Doc. No.

18  40, at pp. 9-13.] However, on reasonableness grounds, the Court significantly lowered

19  the amount of the bond or surety from $77,517.50 to $58,422.50. [Doc. No. 40, at pp.

20  13-19.] Plaintiff was ordered to post the bond by November 3, 2016. [Doc. No. 40, at p.

21  19.] However, plaintiff did not post any bond or surety. Nor did plaintiff seek

22  reconsideration or reduction of the amount of the bond based on the submission of

23  additional financial information supporting its contention that it would be unable to

24  litigate the case because of the bond requirement.

25        On March 29, 2016, the parties consented to the jurisdiction of the undersigned

26  Magistrate Judge for all purposes. [Doc. No. 31.] The Consent specifically states that

27  / / /

28  / / /

5

15cv2171-KSC

the parties "voluntarily consent to have United States Magistrate Judge Karen S. Crawford conduct any proceedings in the case, including trial, and order the entry of a final judgment." [Doc. No. 31.]

On June 1, 2016, with 29 days remaining to complete discovery, the parties filed a Joint Motion to Extend the Discovery Cut-Off and Other Related Dates. [Doc. No. 35.] In the Joint Motion, the parties represented they would be unable to complete discovery by the June 30, 2016 deadline because of "logistical challenges." [Doc. No. 35, at p. 3.] They were in the process of translating and reviewing the 19,491 pages of documents that had been produced in Russian and in English. [Doc. No. 35, at p. 3.] In addition, the parties were trying to informally resolve discovery disputes as to where depositions should take place, which depositions should proceed, and whether plaintiff should produce additional "key documents." [Doc. No. 35, at p. 3.]

The Court granted the parties' Joint Motion to Extend the Discovery Cut-Off and Other Related Dates and issued an Amended Scheduling Order. [Doc. No. 41.] The time for completing discovery was extended from June 30, 2016 to January 31, 2017. [Doc. No. 41, at p. 1.] Expert discovery was to be completed by May 12, 2017. [Doc. No. 41, at p. 3.] The final Pretrial Conference is currently scheduled for October 6, 2017. [Doc. No. 41, at p. 5.]

On June 27, 2016, the parties filed two joint discovery motions. [Doc. Nos. 36 and 38.] In the parties' first Joint Motion re Determination of Discovery Dispute, the parties requested that the Court resolve disputes over the depositions of party witnesses. [Doc. No. 36, at p. 2.] The most significant issue was the location for these depositions. Defendant wanted party witnesses to be deposed in San Diego, because the parties "contractually agreed" to litigate any disputes here. [Doc. No. 36, at p. 3.] For equitable reasons, plaintiff wanted the depositions to be taken by videoconference and/or in a third country, such as France or the United Kingdom. [Doc. No. 36, at pp. 10-11.]

Defendant argued that it would be prejudiced by videoconference depositions. According to defendant, credibility is a key issue in the case, and videoconference

depositions would make it more difficult to observe the demeanor of the deponents. In addition, defendant argued that videoconference depositions would be "exceedingly difficult" to conduct because of the need to examine the witnesses using "extensive documentation" in multiple languages. [Doc. No. 36, at p. 3.]

Plaintiff acknowledged in the Joint Motion that it does not have any offices, employees, or operations in the United States and that a "proper" deposition of its officers could not take place in Russia. [Doc. No. 36, at pp. 11-12.] However, because of the hardship and expense involved in having its executives obtain visas and travel to San Diego, plaintiff argued that it was unfair to require that depositions take place here. According to plaintiff, defendant "is a multinational corporation with offices in nine countries," so a trip to San Diego for a deposition would only be "one of the frequent trips to the headquarters." [Doc. No. 36, at p. 12.] Plaintiff, on the other hand, only has offices in Russia. [Doc. No. 36, at p. 12.] As a result, it was plaintiff's view that defendant wanted the depositions to take place in San Diego to "force" a settlement "on unreasonable terms." [Doc. No. 36, at p. 13.] Without support, plaintiff also claimed that the parties' contract was one of "adhesion drafted by [defendant]." [Doc. No. 36, at p. 11.] As a result, the contract included a "litigation clause," so plaintiff had no choice but to bring the case in California rather than in Russia "where most events took place and most evidence is located." [Doc. No. 36, at pp. 11-12.] Although defendant removed the case to this Court, plaintiff filed the action in state court, because state court rules require depositions to be taken near the deponent's "place of abode" unless the court orders otherwise. [Doc. No. 36, at p. 11.]

To ensure that the Court had authority over the witnesses and to protect the integrity of the deposition process under the circumstances presented, the Court ordered that all depositions of all party witnesses were to occur in person within the Southern District of California. [Doc. No. 42, at p. 2.] However, defendant has represented that the depositions of party witnesses were not completed. [Doc. No. 53-1, at pp. 2-5.]

///

In the parties' second Joint Motion re Determination of Discovery Dispute, plaintiff argued that defendant's responses to certain Requests for Production of Documents were inadequate. Plaintiff therefore sought an order compelling defendant to produce all responsive documents. [Doc. No. 38, at pp. 1-13.] Based on the documents sought in these requests, it was apparent that plaintiff's objective was to undertake a fishing expedition to attempt to uncover documents to support an untimely motion to amend the First Amended Complaint, which would have significantly expanded discovery and the scope of the case. In other words, plaintiff was looking for evidence to support new allegations that defendant unlawfully terminated its distributor agreement with plaintiff on or about December 31, 2014. The anticipated motion to amend would have requested the addition of new parties and causes of action related to defendant's decision to retain a new distributor rather than renew its distributor agreement with plaintiff. Any such motion to amend would have been filed more than a year after the Complaint was filed in state court on April 29, 2015 [Doc. No. 1]; long after the March 4, 2016 deadline for amending the pleadings [Doc. No. 26, at 1]; and without good cause for extending the deadline for amending the pleadings. [Doc. No. 38, at pp. 1-13; Doc. No. 43, at pp. 4-9.] As a result, the Court concluded that plaintiff was not entitled to an order compelling defendant to produce additional documents, because plaintiff's document requests were overly broad and sought access to documents that were not relevant to the matters at issue in the parties' operative pleadings. [Doc. No. 43, at pp. 1-11.]

### *Discussion*

**I.    *Defendant's Rule 41(b) Motion to Dismiss Plaintiff's Complaint.***

Citing Federal Rule of Civil Procedure 41(b), defendant argues in the Motion to Dismiss that the Court should dismiss plaintiff's Complaint with prejudice, because plaintiff failed to comply with the Court's Order of October 4, 2016 to post a bond pursuant to California Civil Code Section 1030. [Doc. No. 44-1, at pp. 1-5; Doc. No. 40, at pp. 9-13.]

/ / /

15cv2171-KSC

Federal Rule of Civil Procedure 41(b) provides in part as follows: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudications on the merits." Fed.R.Civ.P. 41(b). "Dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996).

## II. *Defendant's Rule 37(b)(2) Motion for Terminating Sanctions Against Plaintiff.*

In the Motion for Terminating Sanctions, defendant argues that the Court should dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 37(b)(2), because plaintiff willfully disregarded the Court's Order to make party witnesses available for deposition in San Diego.[1]  [Doc. No. 53-1, at pp. 2-7; Doc. No. 42, at p. 2.] As a result, defendant argues that it has been prejudiced in its ability to prepare a defense, because it has been unable "to undertake even basic discovery." [Doc. No. 53-1, at p. 2.]

Federal Rule of Civil Procedure 37(b)(2) states in part as follows: "If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(b) or 31(a)(4)—fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just order. They may include the following: . . . (v) dismissing the action or proceeding in whole or in part. . . ." Fed.R.Civ.P. 37(b)(2)(A)(v).

///

---

[1]     Defendant's moving papers actually request that the Court "enter default" or a "default judgment" against plaintiff. [Doc. No. 53-1, at pp. 3, 4, 7.] However, the Court construes defendant's request as one for dismissal of the Complaint, because defaults or default judgments are entered against responding parties and not against a party seeking affirmative relief. *See, e.g.*, Fed.R.Civ.P. 55(a); *Dreith v. Nu Image, Inc.*, 648 F.3d 779 (9th Cir. 2011). The Court was unable to locate controlling authority indicating it would be appropriate to enter a default or a default judgment against a plaintiff for failing to prosecute the case or as a terminating sanction for failing to participate in discovery.

1    ***III.***    ***Federal Rule of Civil Procedure 16(f)(1)(C).***

2         Although defendant's moving papers do not rely on it, Federal Rule of Civil

3 Procedure 16(f) also provides in part as follows: "The court may issue any just order,

4 including those authorized by Rule 37(b)(2)(A) (ii)-(vii), if a party or its attorney: ...

5 (C) fails to obey a scheduling or other pretrial order." Fed.R.Civ.P. 16(f)(1)(C).

6         As outlined more fully below, the Court notes that the evidence submitted in

7 support of defendant's Motion for Terminating Sanctions shows that plaintiff disregarded

8 the Court's Amended Scheduling Order filed on October 4, 2016 [Doc. No. 41] by

9 repeatedly declining to make its representatives available for depositions during the time

10 permitted for the completion of fact discovery. The Amended Scheduling Order provides

11 that: "All fact discovery shall be completed by all parties on or before ***January 31, 2017***.

12 [Doc. No. 41, at p. 1.]

13    ***IV.***    ***Relevant Factors.***

14         The standards for dismissal under the above-referenced rules are "basically the

15 same." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). "A district court

16 must weigh five factors . . . . : (1) the public's interest in expeditious resolution of

17 litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

18 defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the

19 availability of less drastic sanctions." *Id.* at 130 (internal quotations and citations

20 omitted). *See also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217,

21 1226 (9th Cir. 2006). "These factors are 'not a series of conditions precedent before the

22 judge can do anything,' but a 'way for a district judge to think about what to do.'" *Id.*

23 quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

24                *1.*    ***Expeditious Resolution/Docket Management.***

25         The public's interest in expeditious resolution of litigation and the Court's need to

26 manage its docket are "usually reviewed" together. *In re Phenylpropanolamine (PPA)*

27 *Prod. Liab. Litig.*, 460 F.3d at 1227. Pursuant to Federal Rule of Civil Procedure 1, the

28 public has an interest in securing "the just, speedy, and inexpensive determination of

every action and proceeding." Fed.R.Civ.P. 1. "[D]elay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1227. "[D]ismissal serves the public interest in expeditious resolution of litigation as well as the court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket." *Id.* at 1234. Under these circumstances, "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

Here, the record indicates that plaintiff has essentially disregarded three separate Orders of this Court, and, as a result, the litigation has been stalled for quite some time. First, on October 4, 2016, after considering briefing from the parties on defendant's Motion for Posting of a Bond Pursuant to California Code of Civil Procedure Section 1030, the Court ordered plaintiff to post a bond in the amount of $58,422.50 within 30 days. [Doc. No. 40.] As outlined more fully above, plaintiff was ordered to post a Section 1030 bond, because defendant was able to make the required showing and plaintiff's opposing arguments were unsubstantiated.

"Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident party is involved." *Simulnet East Associates v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994), citing 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2671. California Civil Code Section 1030(d) states as follows: "If the plaintiff fails to file the undertaking within the time allowed, the plaintiff's action or special proceeding shall be dismissed as to the defendant in whose favor the order requiring the undertaking was made." Cal. Code Civ. Proc. 1030(d) (emphasis added). *See also Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591, 594 (9th Cir. 2013) (finding that dismissal was appropriate under Rule 41(b) when the plaintiff failed to post a Section 1030 bond within the time allotted); *AF*

11

*Holdings LLC v. Trinh,* No. C 12-02393 CRB, 2013 WL 677564, at 2 (N.D. Cal. Feb. 25, 2013) (dismissing complaint when plaintiff had not shown inability to post a Section 1030 bond in the amount ordered and stating there was "no compelling reason to let the case languish" any longer).

The November 3, 2016 deadline for posting the bond has long since passed, and plaintiff did not post a bond. Nor has plaintiff requested any relief from the bond requirement, such as a lower bond amount or additional time to file a bond. In addition, on December 27, 2016, plaintiff's counsel represented to defense counsel that plaintiff "does not plan to post the bond ordered by this Court." [Doc. No. 44-2, at p. 2.] Then, in Opposition to defendant's Motion to Dismiss, plaintiff simply stated, without explanation, that it "did fail to post the bond as ordered by this court." [Doc. No. 46, at p. 2.]

Second, on October 5, 2016, the Court issued an Order requiring plaintiff to make seven of its representatives available for deposition within the Southern District of California. [Doc. No. 42, at p. 2.] In support of its Motion for Terminating Sanctions, defendant submitted counsel's Declaration and copies of e-mails indicating defendant noticed the depositions of these witnesses and attempted a number of times to schedule the depositions, but was advised by plaintiff's counsel that the witnesses would not be made available for their depositions. [Doc. No. 53-2, at pp. 2-3.] Plaintiff did not make these witnesses available even after defense counsel indicated he would file the Motion for Terminating Sanctions. [Doc. No. 53-2, at p. 3.]

Third, the Amended Scheduling Order filed on October 4, 2016 states that: "All fact discovery shall be completed by all parties on or before *__January 31, 2017__*. [Doc. No. 41, at p. 1.] Plaintiff disregarded the Amended Scheduling Order by allowing the January 31, 2017 deadline to lapse without making its representatives available for deposition even though it was ordered to do so and even though defense counsel made repeated attempts to schedule the depositions. [Doc. No. 53-2, at pp. 2-3.]

/ / /

1    In sum, the public's interest in expeditious resolution of litigation and the Court's

2    need to manage the docket both favor dismissal under the circumstances presented.

3    Plaintiff's failure to comply with three separate Orders of this Court have needlessly

4    caused this litigation to stall indefinitely with no viable means to proceed to a fair

5    determination of the case on the merits.

### 2.    *Prejudice to Defendant.*

7    "A defendant suffers prejudice if the plaintiff's actions impair the defendant's

8    ability to go to trial or threaten to interfere with the rightful decision of the case."

9    *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). "]F]ailure to

10   prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a

11   showing of actual prejudice to the defendant from the failure." *Anderson v. Air W., Inc.*,

12   542 F.2d 522, 524 (9th Cir. 1976). In other words, "[t]he law presumes injury from

13   unreasonable delay." *Id.* The presumption can be rebutted with a non-frivolous excuse,

14   but this simply shifts the burden to the opponent to establish "at least some actual

15   prejudice." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1228.

16   Actual prejudice can, of course, be shown by a party's failure or refusal to appear

17   for depositions. Similar to the circumstances at issue in this case, the plaintiffs in *Hyde &*

18   *Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994), were Hong Kong corporations who sued the

19   defendants in the Northern District of California. *Id.* at 1165. When the District Court

20   ordered plaintiffs' depositions to occur by a certain date, the defendants attempted

21   without success to make arrangements to conduct the depositions in Hong Kong. *Id.* The

22   defendants moved to compel, and the District Court ordered the depositions to take place

23   in the Northern District of California where the plaintiffs filed suit, so that the District

24   Court "could oversee and enforce the deposition schedule." *Id.* Despite the imposition of

25   monetary sanctions, the plaintiffs repeatedly failed to appear for their depositions, so the

26   District Court dismissed the case. *Id.* at 1165-1166. On appeal, the plaintiffs argued it

27   was error to order them to travel so far for their depositions. *Id.* at 1166. The Ninth

28   Circuit disagreed, noting that the plaintiff's filed suit in the Northern District of

California "and should therefore expect to have to appear there." *Id.* In addition, the Ninth Circuit agreed with defendants that they were prejudiced, because they were "completely unable" to depose plaintiffs' representatives. *Id.* at 1167. Prejudice was apparent because the defendant "faced a fast approaching court date, a lack of crucial information, and an inability to construct a defense." *Id. See also Adriana Int'l Corp. v. Thoeren*, 913 F.2d at 1412 (finding prejudice based on repeated failure of the plaintiff to appear at scheduled dispositions and produce documents).

Here, plaintiff's failure to comply with the Court's Amended Scheduling Order and the Order requiring it to make its witnesses available for deposition have impaired defendant's ability to prepare a defense and meet pending pre-trial deadlines, because its theory of the case depends on its ability to depose plaintiff's representatives. In a Declaration submitted in support of defendant's request for an order compelling the depositions of plaintiff's representatives, defense counsel represented as follows: "[Defendant] believes this case will turn on the credibility of [plaintiff's] witnesses, who have denied that a critical agreement was made between the parties despite [defendant's] possession of contrary evidence." [Doc. No. 36-1, at p. 2.] All of plaintiff's representatives that defendant sought to depose had direct knowledge of the parties' commercial dealings over the course of their relationship. [Doc. No. 36, at pp. 5, 7-8; Doc. No. 36-1, at pp. 2-3.] In addition, the parties' business relationship ended in 2014 [Doc. No. 20, at pp. 3-4], almost three years ago. As defendant contends, "[v]aluable time has been lost," so that defendant faces a significant risk that memories have faded over time. [Doc. No. 53-1, at p. 4.] Accordingly, the prejudice factor weighs in favor of dismissal.

### 3. *Policy Favoring Disposition of Cases on the Merits.*

Typically, the policy favoring disposition of cases on the merits weighs against dismissal. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1228. On the other hand, this policy "'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that

14

1    direction." *Id.* Plaintiffs are responsible for moving the case towards disposition on the
2    merits at a reasonable pace and for identifying convincing reasons why it is important for
3    the case to be resolved on its merits, but this cannot be accomplished by the use of
4    evasive or dilatory tactics. *In re Eisen*, 31 F.3d 1447, 1454 (9th Cir. 1994).

5          Here, plaintiff has not fulfilled its responsibility to move the case toward a
6    disposition on the merits at a reasonable pace. Rather, as outlined above, plaintiff
7    disregarded three separate Court Orders, which caused the case to come to a virtual
8    standstill, making a disposition on the merits of its Complaint impossible. From the
9    information made available to the Court, it is unclear whether plaintiff is being evasive
10   and/or dilatory or has simply made a decision to abandon the litigation. For example, in
11   connection with the Motion for Terminating Sanctions, defense counsel submitted
12   portions of e-mail chains as exhibits to his Declaration, which strongly suggest plaintiff
13   has simply decided not to pursue the litigation. These e-mails began after the Court's
14   Order of October 5, 2016, compelling plaintiff to make its representatives available for
15   deposition in San Diego. [Doc. No. 42.] On October 5, 2016, defense counsel requested
16   available deposition dates from plaintiff's counsel, who apparently did not respond.
17   [Doc. No. 53-2, at p. 10.] Defense counsel then sent a follow-up e-mail on October 17,
18   2016, and plaintiff's counsel responded that his client had been "incommunicado." [Doc.
19   No. 53-2, at pp. 9-10; Doc. No. 53-2, at p. 2.] Following another follow-up e-mail on
20   October 24, 2016 by defense counsel, plaintiff's counsel responded as follows: "Despite
21   my advice they do not want to deposit costs or appear for deposition. They believe
22   (against my opinion) that the court is politically motivated and a [fair] trial could not be
23   achieved. They want to try in different jurisdiction such as Russia." [Doc. No. 53-2, at
24   p. 7.]

25         Defense counsel continued to send follow-up e-mails as late as February 27, 2017,
26   after the time to complete discovery expired on January 31, 2017. [Doc. No. 53-2, at
27   pp. 3, 17; Doc. No. 41, at p. 2.] In a response dated February 3, 2017, plaintiff's counsel
28   stated as follows: "As to the depositions, I asked client to comply with the order to

15cv2171-KSC

appear for deposition several times now." [Doc. No. 53-2, at p. 17.] On February 13, 2017, plaintiff's counsel simply responded, "Let me ask again." [Doc. No. 53-2, at p. 17.] Soon thereafter, defense counsel filed the Motion for Terminating Sanctions. [Doc. No. 53.] Based on the record before the Court, defendant's filing of the Motion for Terminating Sanctions did not motivate plaintiff to take any steps to move the case toward a resolution on the merits. As far as the Court is aware, plaintiff did not make a single witness available for deposition as ordered.

On the other hand, plaintiff did file an Opposition to defendant's Motion to Dismiss [Doc. No. 46] and an Opposition to defendant's Motion for Terminating Sanctions [Doc. No. 54]. However, plaintiff's Oppositions could only be characterized as perfunctory. Each barely contains two pages of undeveloped arguments, some of which are irrelevant under controlling precedents. For example, plaintiff's Opposition to the Motion to Dismiss admits that plaintiff did fail to post the bond as ordered but argues in conclusory fashion that dismissal is "too drastic" and that the Court is biased against "a powerful domestic player." [Doc. No. 46, at p. 2.] Plaintiff's bald assertions in this regard are unsupported. Similarly, plaintiff's Opposition to the Motion for Terminating Sanctions merely states in conclusory fashion that plaintiff did not "willfully" disregard the Court's Order, and plaintiff did not indicate "in any way that it does not intend to participate in this litigation." [Doc. No. 54, at p. 2.] However, for the reasons outlined herein, the record belies both of these self-serving, unsupported arguments. Likewise, defendant's previous Motion for Posting of a Bond was thinly opposed by plaintiff with conclusory arguments and an unsupported, conclusory declaration by counsel. [Doc. No. 33, at pp. 1-10; Doc. No. 33-1, at pp. 1-5.]

Tellingly, plaintiff's Opposition to defendant's Motion to Dismiss and Opposition to the Motion for Terminating Sanctions do not explain why plaintiff completely disregarded the Court's Amended Scheduling Order; the Court's Order to post a bond; and the Court's Order to make its representatives available for deposition. Therefore, based on the facts and circumstances presented, the Court finds that plaintiff has not

1 fulfilled its duty to move the case towards a disposition on the merits at a reasonable
2 pace. Accordingly, based on the record, the Court can only conclude that plaintiff's
3 inaction and failure to comply with the Court's Orders have so impeded the progress of
4 the case that the preference for deciding cases on the merits weighs in favor of dismissal.

### 4. *Feasibility of Less Drastic Sanctions.*

6 In opposition to defendant's Motions, plaintiff asserts, without support, that it
7 "believes that outright dismissal is too drastic of the measure." [Doc. No. 46, at p. 2;
8 Doc. No. 54, at p. 2.] Defendant argues that less drastic sanctions would be useless,
9 because plaintiff has already been given sufficient warning that its decision to disregard
10 the Court's Orders by failing to post a bond and by failing to make its representatives
11 available for deposition would likely result in a dismissal. [Doc. No. 44-1, at p. 5.]
12 Generally, a District Court must consider the feasibility of less drastic sanctions
13 before actually dismissing a case. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d at 1413.
14 "There is no requirement that every single alternate remedy be examined by the court
15 before the sanction of dismissal is appropriate. The reasonable exploration of possible
16 and meaningful alternatives is all that is required." *Anderson v. Air W., Inc.*, 542 F.2d at
17 525. When less drastic sanctions have already been imposed and/or the court has
18 previously warned the plaintiff of the possibility of a dismissal but these measures have
19 had little or no effect, the "consideration of alternatives" requirement has been satisfied.
20 *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1229. On the other
21 hand, "it is not always necessary for the court to impose less serious sanctions first, or to
22 give any explicit warning." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057
23 (9th Cir. 1998). For example, the Ninth Circuit has "rejected the argument that an
24 express warning regarding the possibility of dismissal is a prerequisite to a Rule 41(b)
25 dismissal when dismissal follows a noticed motion under Rule 41(b)." *In re Eisen*, 31
26 F.3d at 1455.
27 Under the circumstances, the Court has no reason to believe that less drastic
28 sanctions would cause plaintiff to change course at this late date in the proceedings. As

17

outlined above, plaintiff disregarded and made no effort whatsoever to comply with three separate Orders by this Court, so ordering monetary sanctions would be useless. Having disregarded the Amended Scheduling Order, the time for fact and expert discovery expired quite some time ago, and the above-described e-mail exchange between counsel strongly indicate the absence of good cause to re-open discovery. The "good cause" standard primarily focuses on a party's diligence in complying with Court-ordered deadlines. "Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The e-mails described above, as well as plaintiff's nominal responses to defendant's Motions and its failure to comply with three separate Court orders, all serve as convincing evidence that plaintiff has not been diligent and has instead decided, for its own reasons, not to vigorously pursue the case here. As a result, imposing less drastic sanctions would be pointless.

### 5.     *Unreasonable Delay.*

"A Rule 41(b) dismissal "must be supported by a showing of unreasonable delay.'" *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1084 (9th Cir. 2010), quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). The delay here is unreasonable. First, plaintiff filed the case more than two years ago on April 29, 2015. [Doc. No. 1-2, at p. 3.] Second, for reasons that have not been explained in a satisfactory manner, plaintiff caused the litigation to stall indefinitely when it failed to comply with the Court's Order to Post a Bond and the Order to make its representatives available for depositions. Second, as outlined more fully above, from October 4, 2016, when the Amended Scheduling Order was entered to allow the parties additional time to complete fact discovery, through January 31, 2017, when that time expired, plaintiff simply let the clock run with no effort whatsoever to make any its representatives available for deposition or to take any steps to move the case toward a determination on the merits.

### 6. *Willfulness, Bad faith, or Fault.*

"Only 'willfulness, bad faith, and fault' justify terminating sanctions." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate the willfulness, bad faith, or fault." *Hyde & Draft v. Baker*, 24 F.3d at 1167. Particularly given the e-mail exchange discussed above, the Court is convinced that plaintiff's failure to comply with the Court's Orders was willful. Arguably, if plaintiff was financially or otherwise unable to post a bond or to make its representatives available here for their depositions in the time permitted by the deadline set forth in the Amended Scheduling Order, it would have submitted persuasive evidence to support its position, and the Court would have responded accordingly. However, plaintiff did not submit any persuasive evidence to that effect and then simply and repeatedly chose not to comply with the Court's Orders. In addition, plaintiff chose not to comply with the Court's Orders despite a number of attempts by defense counsel, and even by its own counsel, to urge plaintiff to take action to protect its own interests in the case. Therefore, based on the record, this Court can only conclude plaintiff's failure to comply with the Court's Orders was willful.

In sum, dismissal for failure to prosecute is appropriate under Rule 41(b), because plaintiff caused an unreasonable delay in this case by disregarding three separate Court Orders, including an Order to post a bond; an Order to make its representatives available for deposition; and an Order requiring the completion of discovery no later than January 31, 2017. Since one of these Orders is an Amended Scheduling Order, dismissal is also appropriate under Federal Rule of Civil Procedure 16(f)(1)(C). In addition, dismissal is appropriate under Rule 41(b), because a plaintiff is responsible for moving a case towards a resolution on the merits at a reasonable pace, but plaintiff in this case has not taken any significant steps to do so since approximately October 2016. As a result, the case has essentially been stalled since then, resulting in an unreasonable delay. Dismissal is appropriate under Rule 37(b)(2) as well, because plaintiff willfully

15cv2171-KSC

disgregarded a discovery Order requiring it to make certain of its representatives available for deposition. Finally, dismissal is justified under Rule 41(b) and Rule 37(b)(2), because the record shows that all of the factors set forth by the Ninth Circuit in *Malone v. U.S. Postal Service*, 833 F.2d at 130, weigh in favor of dismissal.

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Defendant's Motion to Dismiss for failure to prosecute pursuant to Federal Rule of Civil Procedure is GRANTED.  [Doc. No. 44.]

2.    Defendant's Motion for Terminating Sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2) is GRANTED.  [Doc. No. 53.]

3.    The final Pretrial Conference scheduled for ***October 6, 2017*** is VACATED based on the current status of the case.

4.    ***No later than November 3, 2017***, defendant shall either file a dispositive motion on the counterclaims, seek dismissal of the remainder of the case, or submit a status report setting forth a proposed timetable for further proceedings and trial on the counterclaims.

IT IS SO ORDERED.

Dated:  September 26, 2017

Hon. Karen S. Crawford
United States Magistrate Judge

20

15cv2171-KSC